Schmidt v. The State.

---

No. 9897.

## SCHMIDT v. THE STATE.

CRIMINAL LAW.—*Sale of Meat of Diseased Animals.*—*Statute Construed.*— To constitute an offence, under sec. 2070, R. S. 1881, in the sale of meat of diseased animals, or having the same with intent to sell, it was intended that the sale, or intended sale, must be for *food*, and that the defendant must have knowledge of the bad quality of the meat. ELLIOTT, C. J., and WOODS, J., dissent.

SAME.—*Pleading.*—*Indictment.*—Where, by construction, a meaning is put upon a statute defining an offence, which is not so broad as the general words of the statute, it is not sufficient to charge the offence in the words of the statute, but the indictment must bring the case also within the meaning of the statute. ELLIOTT, C. J., and WOODS, J., dissent.

From the Marion Criminal Court.

*E. A. Parker* and *W. Patterson,* for appellant.

*D. P. Baldwin,* Attorney General, *W. W. Thornton* and *J. B. Elam,* Prosecuting Attorney, for the State.

WORDEN, J.—The appellant was prosecuted in the court below on affidavit and information for a misdemeanor.   Trial, conviction and judgment.

The sufficiency of the affidavit and information was called in question by motions to quash and in arrest, which were overruled.

The affidavit was as follows:

"Be it remembered, that on this day, before me, Daniel M. Ransdell, clerk of the criminal court of Marion county, Indiana, personally came William D. Griffin, who being duly sworn, upon his oath says, that Charles Schmidt, on the 12th day of November, A. D. 1881, at and in the county of Marion, and State of Indiana, did then and there unlawfully have in his possession, with the intent then and there to sell the same, the meat of certain sick, diseased and injured animals, to wit: the meat of certain hogs, contrary," etc.

The affidavit was duly subscribed by the affiant, and the jurat of the clerk was properly added.   The information followed the terms of the affidavit.

The prosecution was based on the following section of the statute:

"Whoever kills, for the purpose of sale, any sick, diseased, or injured animal; or who sells, or has in his possession with intent to sell, the meat of any such sick or diseased or injured animal,—shall be fined not more than five hundred dollars nor less than fifty dollars, to which may be added imprisonment in the county jail not more than six months."   R. S. 1881, sec. 2070.

The first question that seems to present itself is, what was the intent and meaning of the Legislature in the enactment of the above provision?

The section is evidently not to be taken in its exact literal sense.

It is found under the article entitled "Against Public Health."

The evident object of the provision was to prevent the killing of such animals for the purpose of sale for food, or selling, or having in possession with intent to sell, *for food,* the meat of such animals.

The Legislature evidently did not intend to prevent the killing of such animals with intent to sell, or the selling of the meat, for such purposes as would not affect public or individual health; and the killing for sale, or the sale of the meat for other harmless purposes, for which it might have a commercial value, was not intended to be interdicted. The statute is to be construed as if the interdict had been put upon the killing for the purpose of sale for food, and the selling, or having in possession the meat with intent to sell it for such purpose.

Another point arises in the construction of the statute.

Was it the intention of the Legislature to make the acts therein specified an offence, without any knowledge on the part of the accused of the character or bad quality of the animals or meat? We think not.

Without such knowledge there could be no intent to do wrong. "Where such intent is wanting," says Mr. Bishop, "he commits no offence in law, though he does acts completely within all the words of a statute which prohibits the acts, being silent concerning the intent." 1 Bishop Crim. Law, sec. 345.

The doctrine is illustrated by the case of *Commonwealth* v. *Boynton,* 12 Cush. 499, which was a prosecution for selling unwholesome veal, where the court said : " The precedents of indictments for offences similar to that intended to be set out in the present indictment, are quite numerous, and are uniform in alleging, not only that the act of sale was made knowingly, but also in averring that the defendant well knew, at the time of the sale, the corrupt and unwholesome condition of the arti-

cles sold." We shall advert to this case again in the course of this opinion.

Numerous authorities might be cited to the point that guilty knowledge is an essential element of the offence, though it does not enter into the statutory description of it, but we deem it unnecessary. We are clear that by the statute in question it was not intended to punish acts done in ignorance of the character or deleterious quality of the animals or meat.

Before a conviction can be had under the law, then, it must appear that the animals were killed for the purpose of sale for food, or the meat sold or had in possession with intent to sell for such purpose, and that the accused had knowledge of the bad qualities of the animals or meat.

Having ascertained what seems to us to be the true intent and meaning of the law, it remains to enquire whether the affidavit and information, charging the offence in the language of the statute merely, are sufficient.

We are of opinion that they are insufficient. We are aware, of course, that in the great majority of cases it is sufficient to charge a statutory offence in the language of the statute creating it; but this is a rule that is by no means universal. The affidavit and information neither charges the purpose for which the meat was intended to be sold, nor any knowledge on the part of the defendant of its qualities.

The construction we place upon the statute is narrower than the general words. By construction, we limit the operation of the general words to cases where the accused had knowledge of the quality of the article, and where the sale made, or intended, was for food. In such cases it is not sufficient to charge the offence in the language of the statute. In connection with this point, we take pleasure in endorsing what the counsel for the State have said of an American writer upon criminal law. In their brief, the counsel say : "The greatest American writer upon criminal jurisprudence, a man who is not a mere compiler of authorities, thrown together in such a way as to bewilder himself and confuse every body else, but

Schmidt v. The State.

one who uses authorities to illustrate great principles of justice, advises the pleader generally to follow the statute, and use no other words if the statute gives any sort of definition of the offence. Bishop Statutory Crimes, sec. 386."

The author above alluded to lays down the rule applicable to such cases as that before us, as follows: " Suppose, again, the statute is in general terms, yet by construction it has a specific application, narrower than the general words; in such a case, the indictment must correspond as well with the judicial interpretation as with the letter of the enactment." 1 Bishop Crim. Procedure, sec. 628.

The language of the statute here is general, but it was intended to include those only who had knowledge; hence knowledge must be averred. So the language is general in respect to the purpose of sales, or intended sales, but the intention was to prohibit sales for food; hence a sale, or intended sale, for food should be averred.

We do not care to extend this opinion by noticing in detail the cases referred to by Mr. Bishop in support of the doctrine. We may, however, refer to one or two of them. In the case of *The Mary Ann,* 8 Wheat. 380, 389, Mr. Chief Justice MARSHALL stated the rule of pleading, as follows:

" It is, in general, true, that it is sufficient for a libel to charge the offence in the very words which direct the forfeiture; but this proposition is not, we think, universally true. If the words which describe the subject of the law are general, embracing a whole class of individuals, but must necessarily be so construed as to embrace only a subdivision of that class, we think the charge in the libel ought to conform to the true sense and meaning of those words as used by the legislature."

The case of *Commonwealth* v. *Boynton, supra,* was a prosecution for knowingly selling unwholesome provisions, viz., a leg of veal, based on a statute which made it unlawful to knowingly sell, etc. The indictment followed the terms of

Schmidt *v.* The State.

the statute in the description of the offence, but this was held to be insufficient.

It was held necessary to aver that the defendant had knowledge of the condition of the meat at the time it was sold; that the allegation that the defendant "knowingly sold," etc., was insufficient. This decision is commented upon by Mr. Bishop, and evidently receives his decided approbation, as founded upon correct legal principles. 2 Bishop Crim. Procedure, sec. 868.

A reputable writer upon the criminal law of Indiana, states the rule thus: "When the statute is not to be taken in the broad meaning of the words used, but to be limited by construction to a special subject or matter, the indictment should not simply charge the crime in the language of the statute, but should limit the case, and bring it within the construction placed upon the statute." Moore's Crim. Law, sec. 171.

A case in point, which we do not find cited by either of the authors above mentioned, is that of *Anderson* v. *The State,* 7 Ohio, 607. There Anderson was indicted for aiding and abetting one Stevens in passing forged paper.

The statute did not in terms make knowledge of the false character of the paper on the part of the aider or abettor, an element of the offence; and the indictment, following the language of the statute, did not charge such knowledge. It was held, however, that such knowledge was necessary to constitute the offence, and that it must be charged in the indictment. *United States* v. *Carll,* 16 Reporter, 673.

There are numerous cases, in this State and elsewhere, in which it has been held sufficient to charge an offence in the language of the statute creating it, and this is undoubtedly correct where the statute contains an accurate description of the offence. But there are other cases in which that mode of pleading has been held sufficient, where there were implied exceptions to the statutes, as in some of the cases on the subject of the sale of intoxicating liquors. But those cases are

not entirely parallel with that before us, and should not be allowed to control it.

The accused has a right to have all the essential elements that enter into the offence charged in the indictment or information, so that he may know what he has to meet, whether those elements are expressed in terms in the statute, or enter into the offence by construction.

Nothing is gained to the State by departing from the well established principles of law in this respect; nor is there any good reason for adopting a loose and uncertain mode of pleading in criminal cases.

This also is the legislative view of the question. By sec. 1755, R. S. 1881, it is provided that "the indictment or information is sufficient, if it can be understood therefrom— * * *Fifth.* That the offence charged is stated with such a degree of certainty that the Court may pronounce judgment, upon a conviction, according to the right of the case."

Upon conviction in this case, what was made certain? The answer is, that the defendant unlawfully had in his possession the meat of certain diseased hogs, with intent to sell the same. The other elements that enter into the offence are left to uncertainty.

The word "unlawfully" does not help the matter, for the defendant may have had the possession unlawfully in a variety of ways without knowing the quality of the meat, or the intent to sell it for food.

Can the court pronounce judgment according to the right of the case, when a part only of the facts constituting the offence are charged, or found true by the verdict? This question, in our judgment, admits only of a negative answer.

Again, sec. 1759 provides that "The defendant may move to quash the indictment or information when it appears upon the face thereof, either— * * *Fourth.* That the indictment or information does not state the offence with sufficient certainty."

The information should have been quashed.

The judgment below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

## DISSENTING OPINION.

WOODS, J.—I am constrained to dissent from the conclusion reached by the majority of the court, both as to the definition of the offence, and the manner of charging it. I consider the decision a radical departure from the doctrine often reiterated and heretofore seemingly well settled in this State, that the charging of an offence in the language of the statute which creates it will ordinarily be deemed sufficient. All crimes are statutory in this State, and the importance of the rule is manifest. As early as 1832, in the case of *Pelts* v. *The State*, 3 Blackf. 28, the rule was distinctly recognized. It was said:

"CHITTY, speaking of indictments upon statutes" (1 Chitt. C. L. 232), "remarks, 'and not even the fullest description of the offence, were it even in the terms of a legal definition, would be sufficient without keeping close to the expressions of the statute.' In page 237, he further remarks, that ' it is in every case advisable to attend, with the greatest nicety, to the words contained in the act, for no others can be so proper to describe the crime; the exceptions if any are doubtful; and the broad principle which renders a strict adherence essential, is supported by too strong a number of decisions to be shaken.'"

In the case of *The State* v. *Watson*, 5 Blackf. 155, it is said: "Where an indictment is brought upon a statute which has general prohibitory words in it, it is sufficient to charge the offence generally in the words of the statute."

In *Malone* v. *The State*, 14 Ind. 219, it is said: "The indictment is in the language, substantially, of the statute; and as, under our law, we are to look to the statute alone for the definition of offences, it follows that, as a general rule, it will be sufficient in an indictment or information, to charge them in the language of the statute. * * There are some exceptions to this rule; but it seems that an information for usury is not one of them; for an indictment for usury, in the

language of the statute, was held good under former codes, where common law rules governed.

"As an approximation to a test on this subject, perhaps it may be said that, where the statute defines the offence generally, and designates the particular acts constituting it, as, for example, the case of larceny, it is sufficient, in charging the crime, to follow substantially the language of the statute; but where the statute defines the crime generally, without naming the particular acts constituting it, as if a statute makes it a crime to encourage a slave to run away from his master, without defining the act which should be deemed to constitute encouragement, it might be necessary to set out the acts done, that it might appear to the court that they constituted the offence."

In *The State* v. *Kalb*, 14 Ind. 403, it is said: "The statute prohibits the sale of liquor to a minor. * * We think the offence consists in selling to a minor, not believing, or having reason to believe him to be an adult. *Prima facie*, the seller would be presumed to know, under the law, whether the person he sold to was a minor or an adult; and, in a case of doubt, he would, if he sold, take the hazard."

The laws, which from the earliest period in the history of the State have been enacted concerning intoxicating liquors, have defined many offences; as, for instance, sales without license, sales on Sunday, or on other days named, or after certain hours in the day, sales to minors, or to persons in the habit of getting intoxicated; and notwithstanding the court has uniformly and consistently held that there were implied exceptions to the statutory definitions, which were to be construed as narrower than the general words, yet it has been held, with equal uniformity and consistency, that it was sufficient to charge the offence in the language of the statute, and that it was for the defendant to show, or raise a reasonable doubt on the point, that the sale was within the implied exceptions, and not punishable.

If there is any respect in which these cases are not parallel, in principle, with the one under consideration, it has not been pointed out, and I am unable to perceive it. The difference, as it seems to me, is only in the subject-matter of the respective offences. The one law declares the sale of intoxicating liquor unlawful, and the other declares the sale of diseased meat unlawful.

The act which constitutes the offence is defined in each case in general, but in clear and unmistakable words; but, by judicial construction, exceptions are interpolated into each definition.

If there is any reason for saying that under one law the accused must show that the particular sale under investigation was within the exceptions, and under the other law the prosecutor must show that the sale was not within the exceptions, I am not able to perceive it.

Looking outside of the law, and to considerations of public policy, it may be a question whether there are not stronger reasons for imposing on the vender of spoiled meats the burden of showing that the particular sale for which he has been indicted, was made innocently, than for imposing that burden on the seller of intoxicating liquors. There is certainly no reason, either in law or public policy, for imposing upon the former a rule less strict than that which is daily enforced against the latter.

But it is not alone in cases arising under the various laws concerning intoxicating liquors, that this court has held that it is enough to charge the offence in the language of the law which creates it, and that it is incumbent upon the accused to show in defence that the particular act for which he is indicted, though within the letter of the law, is not within its spirit and meaning.

Under an indictment charging, substantially, in the language of the statute, that a supervisor had wilfully and unlawfully failed and neglected to keep a road in repair, it has been held to be matter of defence, not necessary to be negatived in the indictment, that the road was kept in as good repair as the available labor or other means enabled the super-

visor to do. *State* v. *Brown*, 8 Blackf. 69; *State* v. *Harsh*, 6 Blackf. 346; *Tate* v. *State*, 5 Blackf. 73.

So as to gaming, permitting gaming in a licensed grocery, and keeping a gaming house, *State* v. *Bougher*, 3 Blackf. 307; *State* v. *Dole*, 3 Blackf. 294; *State* v. *Maxwell*, 5 Blackf. 230; *State* v. *Miller*, 5 Blackf. 502; receiving stolen goods, *Pelts* v. *State, supra;* disinterment of corpse, *State* v. *McClure*, 4 Blackf. 328; kidnapping, *State* v. *McRoberts*, 4 Blackf. 178; the failure of a justice of the peace to pay over money, *State* v. *Noel*, 5 Blackf. 548; selling spirituous liquors in Vincennes, *State* v. *Graeter*, 6 Blackf. 105 and note; see, also, *State* v. *Mullinix*, 6 Blackf. 554; *State* v. *Watson*, 5 Blackf. 155; fornication—it not being stated in the indictment whether the female was married or unmarried—*State* v. *Gooch*, 7 Blackf. 468; provoking an assault, *Stuckmyer* v. *State*, 29 Ind. 20; selling foreign merchandise without license, *Colson* v. *State*, 7 Blackf. 590; usury, *Malone* v. *State, supra;* carrying off growing crops, *Johnson* v. *State*, 68 Ind. 43; *State* v. *Allisbach*, 69 Ind. 50; assault with intent to murder, *Shinn* v. *State*, 68 Ind. 423. These cases furnish strong illustrations of the rule that it is matter of defence, which the accused must bring forward, that his case is an exception to the general words of the statute.

The only authority cited in Moore's Crim. Law to support the proposition quoted therefrom is the case of *Bates* v. *The State*, 31 Ind. 72; and that case, besides being manifestly out of line with the current of decision in this State, is greatly weakened by force of the vigorous dissenting opinion of one of the judges who then composed the court.

It is, of course, true, and it needed no statute to declare it, that the offence charged must be "stated with such a degree of certainty that the court may pronounce judgment; upon a conviction, according to the right of the case." But the point in dispute is, what constitutes such a charge? The cases cited, and many others which might be added, hold it sufficient to use the language of the statute. A verdict or plea of guilty to a charge so made means that the case of the defend-

ant does not come within any of the exceptions to the statutory definition, and, upon conviction, the court may, therefore, well adjudge him guilty as charged.

In Bishop on Statutory Crimes, section 358, it is said : "If a statute forbids the sale of milk which is adulterated, or of intoxicating liquor unless the seller has a license, and the words of the statute are general and unqualified, it is plain and sound doctrine that the indictment need not allege, and the prosecuting power need not prove on the trial, the seller's knowledge of the adulteration in the one case, or the intoxicating quality in the other. The analogies connected with the law of the intent sufficiently establish this doctrine. Thus, according to constant practice, the indictment does not allege that the defendant was, when he committed the criminal act, of sound mind, or was more than seven years old, or was not a married woman acting in the presence and by command of her husband ; neither is it customary to produce against the defendant, in the first instance, proof of these things. If they are to appear in the case, they are to be set up by the defendant in his defence."

From this point the author considers the course of decisions on the subject in Massachusetts, and adds : "Now, the true doctrine, as a practitioner might expect it to be held by an intelligent court sitting out of Massachusetts, is this : Mere proof by the defendant, that he did not know of the intoxicating quality of the liquor or of the adulteration of the milk, would not necessarily be adequate in defence ; for, if on all the facts, as they should appear from the evidence produced on the one side and on the other, the jury should be satisfied the defendant was lacking in good faith, or did not care, or was wilfully blind, or was negligent in his examinations and inquiries on the question of adulteration or the intoxicating quality, he would be responsible, though in a certain sense he was mistaken. And the reason is, that carelessness or negligence, for example, is criminal, as well as the more specific intent to violate the law. But further the general doctrine

does not go. According, therefore, to the general doctrine, as elsewhere held, and according to sound reason, a prohibition of a thing, in mere unlimited words, no more implies a legislative intention to overturn the principle of the common law that a defendant must be judged by the facts as he honestly believes them to be, than to overturn the principle that, to be responsible, he must be of sound mind."

This, I think, a key to the true interpretation of the statute under consideration, as well as an accurate statement of the rule of pleading and proof in such cases; and there is, as I conceive, no necessary conflict between these quotations and what is said by the same author in section 628, 1 Bishop Crim. Procedure, quoted in the principal opinion. That section is limited by its language, to statutes, which, though general in their terms, are restricted, by judicial construction, to "a specific application;" as, for instance, in the case of *The Mary Ann*, 8 Wheaton, 380, where general words were used, embracing a whole class of individuals, but were so construed as to embrace only a subdivision of the class, it was held that "the libel ought to conform to the true sense and meaning." But the statute under consideration is general, both in its terms and in its application. There may be specific exceptions from its general application, to be judicially declared from time to time, but nevertheless the law is a general one, and not one of "a specific application."

The same author, summing up in relation to what is a sufficient charge of the offence under such statutes, says:

"Any one who reads our American decisions in detail, and observes the diverse adjudications made upon the sufficiency of indictments drawn on new and unexpounded statutes, will observe two things: First, that some judges are more ready than others to accept of indictments which merely follow the words of the statute; secondly, that the tendency in modern times is to require an expansion beyond the words in fewer circumstances than formerly would have been demanded. But what partly accounts for both of these facts is, that, in some of

our States, statutes have expressly permitted wide departures from the common-law rules; while, in other of the States, the departures permissible are less in extent, and less numerous." 1 Bishop Crim. Procedure, section 630.

ELLIOTT, C. J.—I concur in the opinion of WOODS, J.