### PEOPLE v. FRIEDMAN.

(Supreme Court, Appellate Division, Second Department.   April 22, 1910.)

1. FOOD (§ 12*)—OFFENSES—CRIMINAL INTENT—NECESSITY.

As a rule a specific criminal intent is not essential to sustain a conviction for such offenses as keeping unwholesome food stuff for sale contrary to law.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 10–12; Dec. Dig. § 12.*]

2. FOOD (§ 21*)—CRIMINAL PROSECUTION — SUFFICIENCY OF EVIDENCE—CRIMINAL INTENT.

In a prosecution of a baker for keeping rotten eggs for the purpose of using them in food stuff to be offered for sale, evidence *held* to sustain a finding that accused kept the eggs for the purpose alleged.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 22; Dec. Dig. § 21.*]

Thomas, J., dissenting.

Appeal from Court of Special Sessions of City of New York.

Philip Friedman was convicted of keeping rotten eggs to be sold in food in violation of the Sanitary Code, and he appealed.   Affirmed.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Nathan H. Stone, for appellant.

Harry S. Sullivan (Herman Stiefel, on the brief), for the People.

CARR, J.   This is an appeal from a judgment of the Court of Special Sessions, convicting the defendant of a violation of section 42 of the Sanitary Code of the City of New York.   This section reads as follows:

"No meat, fish, eggs, birds, fowl, fruit, vegetables or milk not being then healthy, fresh, sound, wholesome and safe for human food, nor any meat or fish that died by disease or accident, shall be brought into the city of New York, or offered or held for sale as such food anywhere in said city, nor shall any such articles be kept or stored therein.   For the purposes of this section any meat, fish, eggs, birds, fowl, fruit, vegetables or milk offered for sale anywhere in the city by dealers in food, shall be deemed to be offered or held for sale as food."

The defendant was in business in the borough of Brooklyn as a baker.   On January 27, 1909, an inspector of foods of the department of health of the city of New York visited the defendant's premises and went into the basement where the baking was carried on, and asked to see whatever eggs were there.   The foreman showed him some eggs in a case, and stated that they were all that there were.   The inspector, however, continued his search and found a door opening from the basement which was blocked by some barrels of flour, and other

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

things, and asked what was in the place behind the door. The inspector insisted upon the door being open, and found in the place a milk can, containing 30 quarts of eggs, which were broken and rotten. At this time the defendant came into the basement. The defendant testified in his own behalf that he had the eggs in question for some three days; that he had purchased them from an agent who came around; but that he was not present when they were delivered; that after they were delivered he discovered they were rotten, and he placed them apart for the purpose of returning them when the agent called around again at his place of business. On this evidence the court found the defendant guilty, and sentenced him to the penitentiary for 60 days.

On this appeal, the defendant contends that there is no proof of a violation on his part of the provisions of the Sanitary Code above cited. The sentence imposed was somewhat severe; but, if the defendant was keeping these rotten eggs in his place for the purpose of using them in the making of cakes or other breadstuffs, the offense was so contemptible as to warrant this severe punishment. There is, of course, no direct evidence that the defendant was keeping these eggs for such a purpose. There was evidence, however, from which a legitimate inference to that effect could be drawn properly. The explanation offered by the defendant might exonerate him if the court found his statement of facts to be true. The court had the defendant before them, and possessed an advantage in deciding upon the credibility, which we have not.

The defendant contends on this appeal that the language of the Sanitary Code must be so construed as to confine its scope to a storing of the prohibited articles for the purpose of selling them for food, or using them in some material which is to be sold for food. Assuming this construction to be correct, it does not relieve the defendant from the permissible inference, under the surrounding circumstances, that the articles in question were stored by him for the purpose of using them in making up food for sale. In the case of People v. Friedman, 132 App. Div. 61, 116 N. Y. Supp. 538, a tailor had been convicted of having in his possession, in a tenement house, a small quantity of naphtha or gasoline which he used in his business for cleaning garments; the offense, if any there was, consisting in a violation of section 40 of the tenement house act (Laws 1901, c. 334, as amended by Laws 1903, c. 179), which forbade the use in any part of a tenement as a place for the "storage, keeping or handling of any combustible article." This court reversed the judgment of conviction, holding that the possession of a small quantity of naphtha for the purpose of cleaning clothing was not within the provisions of the statute which prohibited the storage of combustible articles. Following the analogy of that case, the mere temporary possession of these rotten eggs by the defendant might not be considered a violation of the Sanitary Code, for they might have been temporarily in his possession for the purpose of being subsequently destroyed by him. The question, however, of the motive of the possession, if it could be considered at all, was for the court below as a question of fact. For reasons which are obvious, generally statutes of this character have been held not to require

proof of a criminal intent, because, if such were so, it would be practically impossible to stamp out the well-known frauds which prevail in the adulteration of foods.

This court quite recently construed another section of the Sanitary Code in relation to the sale of confectionery which contained ingredients deleterious and detrimental to health. People v. Greenberg, 134 App. Div. 599, 119 N. Y. Supp. 325. A confectionery jobber was convicted of selling candy which contained sulphurous acid. He testified in his defense that he bought the candy in question from a manufacturer and did not know its ingredients. This court held, on the authority of the cases of People v. Kibler, 106 N. Y. 321, 12 N. E. 795, and People v. Werner, 174 N. Y. 132, 66 N. E. 667, that the absence of knowledge and criminal intent on the part of the defendant did not constitute a defense.

It seems to me that, however we construe the provisions of the Sanitary Code now before us, we should not interfere with the conviction of the defendant. If proof of criminal intent—that is, intent to use these rotten eggs in the making of breadstuffs—was requisite to sustain the conviction, then the circumstances surrounding the discovery of the eggs were sufficient for a legitimate finding of such criminal intent. If, on the contrary, no proof of intent was requisite, then the provisions of the Sanitary Code were plainly violated.

I recommend that the judgment appealed from be affirmed.

JENKS, BURR, and RICH, JJ., concur. THOMAS, J., dissents.