COMMONWEALTH *vs.* GRAUSTEIN AND COMPANY.

Suffolk. March 14, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Practice, Criminal,* Variance. *Evidence,* Presumptions and burden of proof. *Milk. Corporation,* Liability for misdemeanor. *Words,* "Added," "Whoever."

At the trial of a criminal complaint charging that the defendant in that part of Boston called South Boston had in his possession with intent to sell milk " to which a certain foreign substance, . . . a further description whereof is unknown

to the complainant," had been added, the chemist of the bureau of milk inspection of Boston, who was not the complainant, properly may testify that the 'foreign substance was "cow dung," such testimony not constituting a variance, because it is a presumption of fact that the statement in the complaint that "a further description" of the foreign substance was unknown "to the complainant" is true, and the fact that the witness knew its real nature does not as matter of law conclusively rebut that statement.   .

Even although, at the trial of a criminal complaint charging the defendant therein with having in his possession with intent to sell milk to which "a certain foreign substance, . . . a further description whereof" was unknown to the complainant, had been added, it should appear that the complainant when he swore to the complaint knew that the foreign substance was cow dung, an exception by the defendant to the admission of evidence of the specific character of the foreign substance would not be sustained, because, the essential elements of the crime being stated correctly in the complaint, the variance would not be prejudicial to the defendant.

At the trial of a criminal complaint charging the defendant with a violation of R. L. c. 56, § 55, in that he had in his possession with intent to sell milk to which a certain foreign substance had been added, the jury in answer to a question submitted to them found that the foreign substance was in whole or in part soluble in milk, and thus a contention, strongly urged by the defendant, that the foreign substance was not "added" within the meaning of the statute, unless it was dissolved, was rendered immaterial; but *it was stated* that the court did not intimate that in the absence of such a finding the contention would have been considered tenable.

It is not an essential element of a violation of R. L. c. 56, § 55, which among other things makes it unlawful to have in one's possession with intent to sell milk to which a foreign substance has been added, that the foreign substance should have been added by the previous voluntary act of some person or persons.

Corporations engaged in the business of selling milk are included in the word "whoever" as it is used in R. L. c. 56, § 55, which provides that "Whoever, himself or by his servant or agent, or as the servant or agent of another person, sells, exchanges or delivers, or has in his custody or possession with intent to sell, exchange or deliver or exposes or offers for sale or exchange, adulterated milk or milk to which water or any foreign substance has been added, or milk" of various other descriptions "shall for a first offence be punished by a fine of not less than fifty nor more than two hundred dollars, for a second offence by a fine of not less than one hundred nor more than three hundred dollars and for a subsequent offence by·a fine of fifty dollars and by imprisonment for not less than sixty nor more than ninety days."

COMPLAINT, received and sworn to in the Municipal Court of the South Boston District in the City of Boston on December 17, 1909, charging that on December 8, 1909, the defendant within the district of the court " did have in its possession, with intent to sell the same in said Commonwealth, milk to which a certain foreign substance had been and was then and there added, a further description whereof is unknown to the complainant."

On appeal to the Superior Court, the case was tried before *De Courcy*, J.

It appeared that a sample of milk was taken from an eight quart milk can on a wagon of the defendant and that an analysis was made of it by one Frank E. Mott, the chemist to the bureau of milk inspection of Boston. As to a sediment which he found in the milk, he testified: "From examination of the sediment, both microscopically and chemically, I identified in that sediment animal hairs; there are a few animal hairs. By far the greater part of the sediment, considerably over ninety per cent, is material that passed through the alimentary tract of a cow. . . . In other words, cow dung."

The defendant excepted to the witness being allowed to call the sediment "cow dung," because the complaint alleged that "a further description" of it than that it was "a certain foreign substance" was "unknown to the complainant."

The witness further testified that over ninety per cent of the sediment was material that had passed through the alimentary tract of the cow, cow dung, composed of two chemical substances, cellulose and vasculose, substances that are foreign to milk.

At the close of the evidence, the defendant asked the presiding judge to rule as follows:

"1. That on the evidence produced by the government it has not proved a case against the defendant within the meaning of R. L. c. 56, § 55."

"9. There is not a substance 'added,' within the meaning of the statute, unless there were such an intimate union of the foreign substance with the milk and its elements that the individual parts of the foreign substance lose their individuality in the milk.

"10. That R. L. c. 56, § 55, does not include the prosecution of corporations within its terms directly or constructively."

"12. That the words 'milk to which a foreign substance had been added' as used in the statute means milk to which a foreign substance had been added or caused to be added by the previous voluntary act of some person or persons."

The rulings were refused.

The presiding judge in his instructions to the jury submitted to them the following question, which they answered affirm-

atively: " If the milk in question was milk to which a foreign substance had been added, was that substance in whole or in part soluble in milk ? "

The jury found the defendant guilty; and the defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in March, 1911, and afterwards was submitted on briefs to all the justices.

*J. F. Barry*, for the defendant.

*A. C. Webber*, Assistant District Attorney, for the Commonwealth.

HAMMOND, J.   The evidence of Mott that the substance found in the milk consisted in part of " cow dung " was properly admitted.   The objection of the defendant that it should have been excluded on the ground of variance is untenable.   While it is true that the complaint charges that to the milk there had been added " a certain foreign substance, . . . a further description whereof is unknown to the complainant," still, although some witness called even by the government testified as to the real nature of the substance, it by no means follows as matter of law that at the time the complaint was made the complainant did know its nature. In the absence of any evidence to the contrary the presumption is that a further description was unknown to the complainant at the time the complaint was made.   *Commonwealth* v. *Thornton*, 14 Gray, 41.   *Commonwealth* v. *Coy*, 157 Mass. 200.   And the fact that from knowledge obtained after the complaint was made the government or even the complainant himself could give a further description of the substance is immaterial.   And that is so even if the complainant before making the complaint could by reasonable inquiry have been enabled to give a further description.   Upon this branch of the case the simple question was whether the allegation that a further description was unknown to the complainant was true.   In the absence of evidence to the contrary the presumption is that it was true, but when there is evidence in rebuttal of such presumption then the question is for the jury.   *Commonwealth* v. *Thornton, ubi supra.*   But, even if it be assumed in favor of the defendant that there was a variance, it appears that the essential elements of the crime are correctly stated, and it does not appear that by the variance the defendant

was prejudiced in its defense; and hence the defendant is not entitled to have this exception sustained. .R. L. c. 218, § 35.

Under the instructions the jury must have found that the milk which the defendant had in its possession with intent to sell contained a substance which got into the milk after it had left the cow; that this substance " could have been kept from getting in there by ordinary, reasonable care on the part of the persons handling the milk from the time it left the cow until the time it was delivered to the customer." In answer to a specific question they found that this foreign substance was in whole or in part soluble in milk. It is argued by the defendant that these findings are not warranted by the evidence; but upon considering the evidence in detail we are of opinion that they are.

It is strongly contended by the defendant that the foreign substance must be soluble in the milk. In view of the special finding this question becomes immaterial in this case. We do not mean to intimate, however, that in the absence of such a finding there would have been anything in the contention.

The defendant further contends that the statute applies only to cases where the " foreign substance has been added or caused to be added by the previous voluntary act of some person or persons." So far as material the statute upon which this complaint is founded reads as follows: " Whoever, himself or by his servant or agent, . . . has in his . . . possession with intent to sell, . . . adulterated milk or milk to which water or any foreign substance has been added, or milk produced from cows which have been fed on the refuse of distilleries, or from sick or diseased cows, or, as pure milk, milk from which the cream or a part thereof has been removed, . . . shall . . . be punished."

No extended citation of authorities is needed in support of the proposition that in this class of cases the criminal intent is immaterial. See *Commonwealth* v. *Mixer*, 207 Mass. 141. The history of the milk legislation in this Commonwealth shows conclusively the determination of the law making power to protect the community from adulterated or impure milk. The ultimate purpose is to have pure milk, and to impose upon milk dealers the duty of seeing that the milk be such. In many cases it would be practically impossible to prove that the foreign substance had been purposely added. Nor does it make any differ-

ence to the consumer in what way it has been added.   The intent is to see that impure milk be not sold, irrespective of the question by whom or in what way it became impure.   In view of the history of the legislation on this subject, the emphasis placed by the Legislature upon the need of protecting the community from impure milk, and the fact that whether the foreign substance gets into the milk through a positive act intentional or unintentional, or by accident attributable or not to negligence, is entirely immaterial so far as respects the health of the consumer, which is the ultimate thing to be protected, we are of opinion that the statute is not limited to cases where the foreign substance was added by a previous voluntary act of some person.   The instructions to the jury upon this point were sufficiently favorable to the defendant.   There is nothing inconsistent with this position in *People* v. *Bowen*, 182 N. Y. 1, cited by the defendant.

R. L. c. 8, § 5, provides that the word " ' person ' may extend and be applied to bodies politic and corporate," " unless a contrary intention clearly appears."   Considering the evil intended to be reached by this statute we are of opinion that the word " whoever " includes a corporation like the defendant.   See *Commonwealth* v. *Boston & Worcester Railroad*, 11 Cush. 512; *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348; *Commonwealth* v. *New York Central & Hudson River Railroad*, 206 Mass. 417.   The case is clearly distinguishable from *Benson* v. *Monson & Brimfield Manuf. Co.* 9 Met. 562.

*Exceptions overruled.*