Submitted on brief April 24, reversed May 1, 1917.

## SWANK *v.* BATTAGLIA.

### (164 Pac 705.)

**Sales—Implied Warranties—Articles of Food.**

1. The doctrine of *caveat emptor* applies to a sale of potatoes by a wholesaler to a retail dealer in the absence of deceit or misrepresentation, so that, where the external appearance of the potatoes indicated soundness and good quality, it was no defense to an action for the price that they were affected with dry rot and had been condemned.

**Food—Sale of Diseased Food.**

2. Section 2227, L. O. L., making the sale of diseased food a criminal offense, is not designed to punish persons innocently selling

diseased food products where the defects are latent and not known at the time of the sale.

[As to liability of manufacturer to person injured by unwholesome food, see note in 111 Am. St. Rep. 713.]

From Multnomah: GEORGE N. DAVIS, Judge.

Action by W. I. Swank against A. Battaglia, in which plaintiff obtained a judgment and defendant appeals. Reversed. Judgment rendered.

In Banc. Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action to recover the purchase price of 100 sacks of potatoes sold to the defendant at the agreed price of $1.13 a sack.

The answer admits the sale and delivery of the goods, but alleges that both the plaintiff and defendant are dealers engaged in selling fruit and vegetables; that the potatoes were sold to defendant for the purpose of resale as food to the citizens of Portland; that the potatoes were infected with dry rot and unfit for food, a fact of which defendant was ignorant when he purchased them, and that they were inspected by the food inspector of the City of Portland and found to be unfit for human food and condemned; that the portion which defendant had sold was returned to him and he was compelled to make good the purchase price to his customers, and that the quantity remaining on hand was sold for $18.50 for hog feed. The case being put at issue by appropriate denials the court made the following findings of fact:

"1. That on or about the 23d day of May, 1916, at Portland, Multnomah County, Oregon, the plaintiff sold and delivered to defendant, at his special instance and request 100 sacks of potatoes, at the agreed price of $1.13 per sack, for the purpose of use as human food.

"2. That the contract sale price of 100 sacks of potatoes based on the agreed price of $1.13 per sack amounted in the aggregate to $113, no part of which has been paid.

"3. That said potatoes so sold and delivered were affected by the disease known as 'Fusarium Wilt' or dry rot, and by reason thereof were unfit for human food.

"4. That said defect was not apparent upon casual inspection but became apparent only upon cutting or cooking said potatoes, and was not discovered until after said sale and delivery.

"5. That about five days after said sale and delivery said potatoes were condemned by the market inspector of the City of Portland, Oregon, and by the inspector of the State Horticultural Bureau of the State of Oregon, as being affected with Fusarium Wilt or dry rot and unfit for human food, notice thereof being given by said officers to both plaintiff and defendant.

"6. That said defendant prior to such condemnation had sold 30 sacks of said potatoes for purposes of human food; that all but a few sacks of said potatoes so sold were returned to defendant by his customers as unfit for human food, and the purchase price refunded by defendant to such customers.

"7. That the condemned potatoes and the potatoes returned to defendant were, by permission of said inspectors, sold as hog feed; that the total sum realized by defendant from such sale and from those not returned to him was $31."

As a conclusion of law the court found that there was an implied warranty that the potatoes were fit for human food and that plaintiff was entitled to judgment for only $31, the price received for potatoes sold to customers and not returned plus the amount received for those sold for hog feed. There was a judgment for plaintiff upon these findings for the sum of $31, from which he appeals.

Submitted on brief under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED.   JUDGMENT RENDERED.

For appellant there was a brief over the name of *Mr. Charles M. Hodges.*

For respondent there was a brief presented by *Messrs. Johnson & Mathews.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

There is but one question in this case, namely, whether there is any implied warranty of the quality of the goods sold under the circumstances disclosed here, no actual warranty being pleaded or proved. So far as the quality of goods purchased is concerned the rule of *caveat emptor* usually applies, unless there is deceit or misrepresentation, which is not the case here. The external appearance of the potatoes indicated soundness and good quality. It was only when they were sliced for cooking that the defect became visible, and there is nothing in the evidence indicating that plaintiff knew of their unsoundness. The defendant testified:

"They looked pretty good; they looked pretty nice from looking at them."

So the case simmers down to this: The plaintiff sold the potatoes to defendant and defendant purchased them, each supposing them to be sound and having reason to believe they were so. There is authority for the holding that where provisions are sold to a customer at retail for immediate use, there is an implied warranty that they are reasonably fit for food: Benjamin on Sales (7 ed.), p. 661, and cases there cited. But in sales to dealers the rule is different.

In such instances the rule of *caveat emptor* is applied: *Howard* v. *Emerson,* 110 Mass. 320 (14 Am. Rep. 608) ; *Wiedeman* v. *Keller,* 171 Ill. 93 (49 N. E. 210) ; *Giroux* v. *Stedman,* 145 Mass. 439 (1 Am. St. Rep. 472, 14 N. E. 538) ; *Ryder* v. *Neitge,* 21 Minn. 70; *Moses* v. *Mead,* 1 Denio (N. Y.), 378 (43 Am. Dec. 676) ; *Warren* v. *Buck,* 71 Vt. 44 (76 Am. St. Rep. 754, 42 Atl. 979) ; *Hanson* v. *Hartse,* 70 Minn. 282 (68 Am. St. Rep. 527, 73 N. W. 163) ; *Humphreys* v. *Comline,* 8 Blackf. (Ind.) 516. The case of *Howard* v. *Emerson,* 110 Mass. 320, is typical of all those above cited. In that case Howard, a farmer, had sold to Emerson, a butcher and dealer in provisions, a cow which Emerson purchased for the purpose of butchering and retailing to his customers. The flesh was found unfit for food, and the purchaser refused to pay for her, and suit was brought to recover the purchase price. The court said:

"The general rule of the common law is that, upon a sale of goods, if there is no express warranty of the quality of the goods sold, and no fraud, the maxim *caveat emptor* applies, and no warranty is implied by law. *Winsor* v. *Lombard,* 18 Pick. (35 Mass.) 57; *Mixer* v. *Coburn,* 11 Metc. (52 Mass.) 559 (45 Am. Dec. 230) ; *French* v. *Vining,* 102 Mass. 132 (3 Am. Rep. 440). The defendants contend that when articles of food are sold for immediate domestic use there is an implied warranty or representation that they are sound and fit for food, and that the case at bar falls within this exception to the general rule. *Van Bracklin* v. *Fonda,* 12 Johns. (N. Y.) 468 (7 Am. Dec. 339). But we think that this exception, if established, does not extend beyond the case of a dealer who sells provisions directly to the consumer for domestic use. In such cases it may be reasonable to infer a tacit understanding, which enters into the contract, that the pro-

visions are sound.   The relation of the buyer to the
seller and the circumstances of the sale may raise the
presumption that the seller impliedly represents them
to be sound.   But the same reasons are not applicable
to the case of one dealer selling to another dealer;
and we think the rule is settled that in the sale of pro-
visions, in the course of general commercial transac-
tions, the maxim *caveat emptor* applies, and there is
no implied warranty or representation of quality or
fitness. *Emerson* v. *Brigham,* 10 Mass. 197 (6 Am.
Dec. 109); *Winsor* v. *Lombard,* 18 Pick. (35 Mass.) 57;
*Hart* v. *Wright,* 17 Wend. (N. Y.) 267; *Wright* v. *Hart,*
18 Wend. (N. Y.) 449; *Moses* v. *Mead,* 1 Denio. (N. Y.),
378 (43 Am. Dec. 676); *Burnby* v. *Bollett,* 16 M. & W.
644.   In the case at bar the plaintiff was a farmer
and the defendants were butchers and dealers in pro-
visions for immediate use as food.   The fact that the
plaintiff knew the purpose for which the defendants
purchased the cow would not render him liable, upon
an implied warranty, for unknown defects which made
her unfit for that purpose.   A warranty of fitness may
be implied in contracts to manufacture or in executory
contracts to sell, but it is not implied in executed sales
of specific chattels. *Chandelor* v. *Lopus,* 1 Smith's
Lead. Cas. (5th Am. ed.) 238, and notes.''

The cases last above cited seem to settle the law
against the contention of the plaintiff in the instant
case.

Counsel for plaintiff cite *Morse* v. *Union Stockyard
Co.,* 21 Or. 289 (28 Pac. 2, 14 L. R. A. 157), and *Kitchin*
v. *Oregon Nursery Co.,* 65 Or. 20 (130 Pac. 408, 1133,
132 Pac. 956), as holding a contrary view, but when
properly analyzed it will appear that this contention
is unfounded.   In the former case the buyer requested
the seller to send him two carloads of ''good beef
cattle.''   The seller shipped him two carloads of cattle
unfit for beef.   Where articles of a particular descrip-

tion are ordered, there is an implied warranty that those furnished answer that description, and that is what the holding in the case cited amounts to. If A requests B to send him a herd of cows for milking purposes, and B sends him a herd of Hereford steers fit only for beef, it stands to reason that he should not recover for the price of cows. Whether we treat the case as a breach of an implied warranty or a failure to perform the result is the same. In such a case there is *prima facie* evidence of fraud on the part of the seller. The fitness of the cattle for beef could be known to the seller upon inspection of the cattle before he shipped them, and could not be known to the buyer, if, as in the case cited, he resided at a distance until they were received. Under these circumstances, and where the buyer paid for the cattle before he received them, relying upon the judgment and good faith of the seller as to their quality, the court very properly held that he could recover damages. Here there was no stipulation as to quality, and no bad faith on the part of the seller, who believed and had a right to believe that the potatoes sold were sound and free from disease. In the case of *Kitchin* v. *Oregon Nursery Co.*, 65 Or. 20 (130 Pac. 408, 1133, 132 Pac. 956), the statement of the case in the opinion is not full, but an inspection of the record shows the complaint alleged that plaintiff was induced to purchase by reason of certain advertisements put out by defendant to the effect that it dealt only in "reliable nursery stock," and that all trees grown by it were strong, vigorous, healthy trees, whereas the trees furnished were not such, and that defendant knew they were not. There was an element of fraud and misrepresentation charged in that case which is entirely lack-

ing here. Mr. Justice EAKIN in discussing the doctrine of implied warranty by reason of an article being ordered for a particular purpose expressly waives its application to the case there under consideration:

"The principal contention of plaintiff is as to the liability of defendant upon its implied warranty that the articles sold shall be suitable for the purposes to which they are to be applied. This rule is well recognized by this court: *Gold Ridge Min. Co.* v. *Tallmadge,* 44 Or. 34 (74 Pac. 325, 102 Am. St. Rep. 602); *Lenz* v. *Blake,* 44 Or. 569, 573 (76 Pac. 356, 357); *Mine Supply Co.* v. *Columbia Min. Co.,* 48 Or. 391, 395 (86 Pac. 789, 790). However, in this case it is not necessary to apply the rule because the plaintiff is not only contending that the trees were not suitable for the use to which they were to be applied, but that the trees were not sound. Defendant admits that it is bound by an implied warranty to that extent, namely, that the trees were sound and healthy, and the testimony strongly tended to establish the fact that the trees were not sound, but were unhealthy trees having an inherent defect which caused them to die."

It may also be added in that case the defendant was a large grower of nursery stock selling the same at wholesale to dealers as well as at retail and might well be included within the reasoning of that line of cases which hold that there is an implied warranty by the manufacturer of articles that they are free from latent defects, but it is not necessary to consider that phase of the question in the case at bar.

Another suggestion of counsel for plaintiff is that no recovery can be had because the contract is illegal in that it was in violation of Section 2227, L. O. L., which makes the sale of diseased food a criminal offense; but we do not think it was the intent of that section to punish persons innocently selling diseased

food products where the defects are latent and not known at the time of the sale. In the sale of liquor to minors and like offenses, it has been held that ignorance of the age of the purchaser is no defense to a prosecution for such sale; but this rule arises from the theory that dealing in such merchandise is at best an authorized nuisance in which the dealer must engage at his peril. On the contrary, the sale of food is a business beneficial to the community and one that should be encouraged, and a dealer will not be held to have violated a law against selling diseased food unless the pernicious character of such food was known to him or he disregarded such obvious precautions in inspecting it as would be equivalent to such intent, which is not the case here.

There is neither pleading, finding nor testimony to sustain the judgment rendered in this case, and the judgment of the Circuit Court will be reversed and one entered here in accordance with the prayer of the complaint.                REVERSED.   JUDGMENT RENDERED.