SCHAUER, J.
 

 Defendant Carl Clavin, upon undisputed evidence that he sold, through an employee in the regular course of his business (conducted under the name of the California Co-Operative Poultry Company), to a baker in the city of Los Angeles, two 30-pound cans of “frozen eggs, which were then and there adulterated in that they consisted . . . in part of filthy, decomposed and putrid animal substance . . . (B-eoli or fecal matter) and contained black rot and blood and were in a filthy, decomposed and putrid condition ’ ’, was convicted by jury verdict on a complaint charging him with violation of section 1 of the so-called Pure Foods Act of the state of California (Stats. 1907, p. 208, as amended; Act 57, Deering’s Gen. Laws (1931) p. 5). He appeals from the judgment and on his behalf it is contended in effect that the evidence is not sufficient to support the verdict in that (a) it does not show that either defendant or his employee had knowledge or was culpably negligent in not knowing that the food product sold was in fact “adulterated” within the meaning of the act, and (b) the evidence discloses that the sale in question was made by defendant’s employee and, although such employee was acting in the regular course of his employer’s business, it does not appear that the employer, at the time, had knowledge of, or personally directed, this particular sale. We find neither contention efficacious as a defense.
 

 The portions of the Pure Foods Act (Stats. 1907, p. 208, as amended; Act 57, Deering’s Gen. Laws, (1931) pp. 5, 6, 12) material here, read as follows: “Sec. 1. The manufacture, production, preparation, compounding, packing, selling, offering for sale or keeping for sale within the State of California ... of any article of food . . . which is adulterated . . . within the meaning of this act is hereby prohibited. Any person . . . who shall manufacture or produce, prepare or compound, or pack or sell, or offer for sale, or keep for sale, in the state of California any such adulterated . . . food . . . shall be guilty of a misdemeanor . . .
 

 
 *Supp. 777
 
 “Sec. 4. Food shall be deemed adulterated within the meaning of this act, in any of the following cases: . . .
 

 “Sixth: If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable
 
 substance, or any portion of an animal or vegetable unfit for food, whether manufactured or not . . .
 

 “See. 8. The possession of any adulterated . . . article of food ... by any manufacturer, producer, jobber, packer, or dealer in food, or broker, commission merchant, agent, employee or servant of any such manufacturer, producer, jobber, packer, or dealer, shall be
 
 prima f-acie
 
 evidence of the violation of this act. . . .
 

 “Sec. 20. Food found to be adulterated . . . within the meaning of this act may, by order of any court or judge, ... be seized or destroyed. . . .
 

 “See. 22. No dealer shall be prosecuted under the provisions of this act when he can establish a guaranty signed by the wholesaler, jobber, manufacturer or other party residing in the United States from whom he purchased such article, to the effect that the same is not adulterated . . . within the meaning of this act.”
 

 Although the questions presented upon this appeal do not appear to have been heretofore passed upon directly by any court of last resort in California, they are not novel in a number of other jurisdictions, and legislation regulating the production and sale of food products is not new. At common law it was an offense to sell unwholesome provisions for use as human food (26 C. J. 771, sec. 51, and eases there cited); with the growth in complexity of social and economic structures the common law became inadequate to afford complete protection against abuses in the premises and the ensuing efforts of the people to protect themselves have found wide expression in federal, state and municipal laws. (See title 21, U. S. C. A., for federal enactment, and 26 C. J. 751, note 13, for list of states having adopted similar legislation.)
 

 Generally speaking these laws are of two types: (1) those (ordinarily earlier in point of time) which expressly or by necessary implication provide for a
 
 specific intent
 
 as an essential element of the offense denounced, and (2) those (including nearly all recently enacted legislation) which make the offense dependent merely upon the commission of a forbidden act irrespective of any specific intent. The first class
 
 *Supp. 778
 
 includes, for example, those offenses in which a deliberate fraudulent intent is an element such as is illustrated by the case of
 
 DeWeese
 
 v.
 
 People,
 
 (1916) 61 Colo. 140 [156 Pac. 594, L. R. A. 1916E, 326], The second class transcends the limits of the first and comprehends a higher and fuller degree of
 
 protection of
 
 the public by placing upon the dealer in foodstuffs a higher and fuller degree of
 
 responsibility to
 
 the public.
 

 Laws of the second class do
 
 not,
 
 as has sometimes been said, make a dealer liable for a crime committed by another, nor do they make him criminally responsible for accidents or deeds beyond his control, but they do hold him, criminally as well as civilly, accountable for the quality of the goods which he sells. If he undertakes to sell food for human (and in many cases other) uses he must sell pure and not adulterated food; that is his responsibility, fixed by law. He does not need to assume it as he does not need to engage in that business; but if he does engage in that business the law will not permit him to evade his responsibility to the public, declared by law, by pleading ignorance of the quality or contents of that which he may lawfully sell only if it is pure. His act in selling food, if he voluntarily engages in that business, is deliberate, willful, intentional and knowing. He may not, except as provided by the statute, be heard to say as a defense to selling adulterated food that he did not look into the package or otherwise acquire knowledge that it was adulterated and hence could not lawfully be sold, because the law has enjoined upon him the duty of knowing that his goods are pure. Testimony that he sold the food without knowing that it was adulterated would be evidence showing fault, not innocence; perhaps definitive of a motive not deliberately vicious but nevertheless not inconsistent with guilt.
 

 There have been but few eases arising out of statutes comparable textually to the California legislation, wherein the courts have failed to interpret and uphold such laws as placing upon the seller the burden of ascertaining at his peril that the article he sells is not within the prohibition of the law. Such cases include:
 
 People
 
 v.
 
 Fulle,
 
 (1883, Ct. of Gen. Sess.) 12 Abb. N. C. (N. Y.) 196, relied upon here by
 
 amicus curiae
 
 for appellant, in which case the author of the opinion stated as a ground for the court's decision that there was a fatal variance between indictment and proof but remarked
 
 *Supp. 779
 
 further that he thought a “just construction of the act not only requires proof of the sale of an adulterated article, but also that the sale was made with a criminal intent, or under circumstances of such negligence as in law supplies the place of the criminal intent”;
 
 Schmidt
 
 v.
 
 State,
 
 (1881) 78 Ind. 41, in which, under a statute declaring that “whoever kills, for the purpose of sale, any sick, diseased, or injured animal, or who sells or has in his possession, with intent to sell, the meat of any such sick or diseased or injured animal” shall be fined, etc., it was held, by a three to two decision, that conviction thereunder would not be sustained unless the evidence showed that the defendant had knowledge of the “bad qualities of the animals or meat”; and the civil ease of
 
 Swank
 
 v.
 
 Battaglia,
 
 (1917) 84 Or. 159 [164 Pac. 705, L. R. A. 1917F, 469], wherein the court ruled that the doctrine of
 
 caveat emptor
 
 applied where one dealer sold potatoes to another dealer and said that it did not think that it was the intent of the statute in that state making the sale of diseased food a criminal offense (Sec. 2227, L. O. L.) “to punish persons innocently selling diseased food products where the defects are latent and not known at the time of the sale”.
 

 Opposed to the three cases last cited we find an overwhelming weight of authority from the jurisdictions of Delaware
 
 (State
 
 v.
 
 Huber,
 
 (1913) 4 Boyce, 259 [88 Atl. 453]) ; District of Columbia
 
 (Weigand
 
 v.
 
 District of Columbia,
 
 (1903) 22 App. D. C. 559, 572) ; Florida
 
 (Meigs
 
 v.
 
 State,
 
 (1927) 94 Fla. 809 [114 So. 448, 449]) ; Indiana, under a statute subsequent in time to the decision in
 
 Schmidt
 
 v.
 
 State, supra,
 
 (1881) 78 Ind. 41
 
 (Groff
 
 v.
 
 State,
 
 (1908) 171 Ind. 547 [85 N. E. 769, 770, 7 Ann. Cas. 133]); Louisiana
 
 (New Orleans
 
 v.
 
 Vinci,
 
 (1922) 153 La. 528 [96 So. 110, 28 A. L. R. 1382, 1384]) ; Maine
 
 (State
 
 v.
 
 Rogers,
 
 (1901) 95 Me. 94 [85 Am. St. Rep. 395, 49 Atl. 564, 567]) ; Maryland
 
 (Fox
 
 v.
 
 State,
 
 (1901) 94 Md. 143 [89 Am. St. Rep. 419, 50 Atl. 700, 701]); Massachusetts
 
 (Com.
 
 v.
 
 Graustein & Co.,
 
 (1911) 209 Mass. 38 [95 N. E. 97, 98]) ; Michigan
 
 (People
 
 v.
 
 Worden Grocer Co.,
 
 (1898) 118 Mich. 604 [77 N. W. 315, 317]) ; Missouri
 
 (State
 
 v.
 
 Maurer,
 
 (1914) 255 Mo. 152 [164 S. W. 551, 555, Ann. Cas. 1915C, 178]) ; Montana
 
 (Kelley
 
 v.
 
 John R. Daily Co.,
 
 (1919) 56 Mont. 63 [181 Pac. 326, 329]) ; Nebraska
 
 (Lansing
 
 v.
 
 State,
 
 (1905) 73 Neb. 124 [102 N. W. 254, 255]) ; New Jersey
 
 (Board of Health
 
 v.
 
 Vandruens,
 
 (1909) 77 N. J.
 
 *Supp. 780
 
 L. 443 [72 Atl. 125, 126]) ; New York, subsequent in time to
 
 People
 
 v.
 
 Pulle, supra,
 
 (1884) Ct. of Gen. Sess., 12 Abb. N. C. (N. Y.) 196 ;
 
 (People
 
 v.
 
 Schaeffer,
 
 (1886) 41 Hun, 23, 25 ;
 
 People
 
 v.
 
 Kibler,
 
 (1887) 106 N. Y. 321 [12 N. B. 795] ;
 
 (People
 
 v.
 
 Greenberg,
 
 (1909) 134 App. Div. 599 [119 N. Y. Supp. 325, 326])
 
 ; (People
 
 v.
 
 Friedman,
 
 (1910) 138 App. Div. 29 [122 N. Y. Supp. 500, 501, 502]) ; Ohio
 
 (State
 
 v.
 
 Kelly,
 
 (1896) 54 Ohio St. 166 [43 N. E. 163, 164]) ; Pennsylvania (C
 
 om.
 
 v.
 
 Pflaum,
 
 (1912) 50 Pa. Super. 55, 66) ; Washington
 
 (State
 
 v.
 
 Burnam,
 
 71 Wash. 199 [128 Pac. 218, 219]) ; Wisconsin
 
 (Scott
 
 v.
 
 State,
 
 (1920) 171 Wis. 487 [177 N. W. 615, 616]) ; Porto Rico
 
 (People
 
 v.
 
 Vesquez,
 
 (1917) 26 Porto Rico, 13, 14) ; England
 
 (Hobbs
 
 v.
 
 Winchester Corp.,
 
 (1910) 2 K. B. 471, 79 L. J. K B. (N. S.) 1123, 74 J. P. 413, 102 L. T. (N. S.) 841, 848, 849, 26 Times L. R. 557, 8 L. G. R. 1072-c) and Canada
 
 (Bex
 
 v.
 
 Chisholm,
 
 (1907) 14 Ont. L. Rep. 178, 183). For further authorities see annotation in 28 A. L. R. 1385.
 

 A reading of those portions of the California statute above quoted leaves no doubt that the legislature recognized that human beings are not coprophilous, that it intended absolutely to prohibit the sale of food having feculent content, such as that involved in this case, or being otherwise adulterated within the meaning of the act, and inexorably to penalize the sale of such adulterated food, irrespective of knowL edge of the fact of adulteration, excepting only under the proviso of the act itself. Section 1 (Stats. 1907, p. 208; Deering’s Gen. Laws (1931), Act 57) declares unqualifiedly that “Any person . . . who shall . . . sell ... or keep for sale in the state of California any such adulterated . . . food . . . shall be guilty of a misdemeanor;” section 8 ordains that “the possession of any adulterated . . . article of food . . . by any . . . dealer in food . . . shall be
 
 prima facie
 
 evidence of the violation of this act”, while the language of section 22, reading, “No dealer shall be prosecuted under the provisions of this act when he can establish a guaranty signed by the . . . party residing in the United States from whom he purchased such article, to the effect that the same is not adulterated,” by affirmatively providing that a showing of certain facts shall exculpate a dealer from penal responsibility for the sale of adulterated food, implies that in the absence of such showing his guilt and responsibility will be
 
 *Supp. 781
 
 absolute, upon proof of his commission of the forbidden act, whether or not he had knowledge of the character of goods sold. We are thus constrained to hold that in California a dealer in foodstuffs is under the duty of ascertaining at his peril whether an article of food kept for sale or sold by him conforms to the standard fixed by the law, or in default thereof, if it bq shown that he has kept for sale or sold food that was adulterated, to produce a guarantee of purity of such food, signed by the person resident in the United States from whom the article was purchased, and bear the burden of establishing the right, possibly conferred by section 22, to be excused, under the circumstances therein specified, from the consequences of his act.
 

 The fact that the sale of the adulterated food in the instant case was made by an employee of defendant without his personal knowledge or immediate direction is immaterial. The duty placed upon the dealer in foods is absolute within the limits of his control. If he discovered adulterated food in his stock, took it therefrom, carefully locked it up preparatory to destroying it, and if before consummation of that event it were stolen from him, he obviously would not be guilty of
 
 selling
 
 adulterated food because there was no sale (although he would still be guilty, if the fact were shown, of having
 
 originally kept it for sale);
 
 but if he has such food in his stock of goods, whether he knows its condition or not, and has a clerk authorized to make sales from such stock, then any sale made therefrom by such clerk is a sale by the employer, because they are the employer’s goods, sold through his agent, and if adulterated food is sold, the crime is his as well as his clerk’s; he can delegate authority to sell that which he possesses but he cannot avoid responsibility for what is so sold (26 C. J. 769, sec. 37 ;
 
 Groff
 
 v.
 
 State, supra,
 
 (1908) 171 Ind. 547 [85 N. E. 769, 17 Ann. Gas. 133] ;
 
 People
 
 v.
 
 Schaeffer, supra,
 
 (1886) 41 Hun, 23 ;
 
 Bissman
 
 v.
 
 State,
 
 (1895) 9 Ohio C. C. 714, 6 Ohio C. D. 712;
 
 Meyer
 
 v.
 
 State,
 
 54 Ohio St. 242 [43 N. E. 164, 165] ;
 
 Meigs
 
 v.
 
 State,
 
 (1927) 94 Fla. 809 [114 So. 448, 449]), and this has been held true, in effect, even where the particular act is not expressly directed or is contrary to the employer’s orders, if within the general scope of the agent’s authority.
 
 (State
 
 v.
 
 Field,
 
 (1921) 95 Vt. 375 [115 Atl. 296, 298] ;
 
 Scott
 
 v.
 
 State,
 
 (1920) 171 Wis. 487 [177 N. W. 615, 616].)
 

 
 *Supp. 782
 
 There being no question of sufficiency of evidence to establish all essential elements of the offense on the theories of law we have adopted, the judgment is affirmed.
 

 Shaw, P. J., and Bishop, J., concurred.