Robinson & Warren v. State of Arkansas.

2. PLEAD-ING: Material allega-tions.

Reversed and remanded for further proceedings.

---

ROBINSON & WARREN v. STATE OF ARKANSAS.

38    641
88    268

1. LIQUOR: *Criminal liability of part owner, for illegal sale.*

A partner in a saloon or dramshop is criminally liable for an illegal sale of liquor by his co-partner, to a minor, though he was absent at the time of the sale, and had no knowledge of it. EAKIN, J., dissenting.

2. SAME: *Retailing, is not a natural right.*

No one has a natural right to retail spirituous liquors. The whole subject is within the police power of the Legislature, and persons engaging in the business, must submit to such regulations, terms and burthens as the Legislature may have prescribed for the public good.

ERROR to *Pope* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

*Moore*, Attorney-General, for appellees.

*Sec.* 19, *Act March* 8*th*, 1879 (*p*. 38), is the law of this case. Warren was certainly "*interested in the sale*" if he accepted any part of the proceeds ; and if he did not, it was competent for him to show it, by proof, as a defense, which he did not do.

### STATEMENT.

ENGLISH, C. J. The indictment charges, " That Henry Robinson and Jesse Warren, on the tenth day of January, 1881, in the county of Pope, unlawfully were interested in the sale, to one R. B. Lazenby, of one pint of ardent liquors, without the written consent or order of the parent or guardian of the said R. B. Lazenby, who was then a minor, under the age of twenty-one years," etc.

On the trial, the State introduced R. B. Lazenby, as a witness, who testified, in substance, that about the tenth day of November, 1881, at the saloon, or business house of Robinson & Warren, in Atkins, Pope county, at the request of witness, who was then a minor, under the age of twenty-one years, and without the written order or consent of his parent or guardian, defendant, Henry Robinson, sold and delivered to witness one pint of ardent liquors, for which he paid him fifty cents.

That defendant, Warner, was a joint owner with defendant, Robinson, in the liquors sold, they being partners in business, and the sale aforesaid was made at their business house, or saloon ; but that defendant, Warren, was absent at the time the sale was made ; and if he knew of it, or had any knowledge or information of such sale, witness did not know it. This was all the evidence introduced on the trial.

Defendants moved to exclude the testimony as to defendant, Warren, and the court overruled the motion.

Robinson & Warren v. State of Arkansas.

The court charged the jury: "That if they believed, from the evidence, beyond a reasonable doubt, that at the saloon of defendants, in the town of Atkins, county of Pope, etc., within twelve months before the finding of the indictment, the defendant, Robinson, sold to the witness, Lazenby, one pint of ardent liquors, without the written consent or order of his parent or guardian, and that said Lazenby was under twenty-one years of age at the time; that although the defendant, Warren, may not have been present at the time, or have known or had any knowledge of such sale, if the jury believe that he was a partner in business with the defendant, Robinson, and a joint owner with him to and of the liquor sold to said witness, they will find each of the defendants guilty, and assess their punishment at a fine of not less than $50 each, and not more than $100."

To this charge defendants excepted. The jury found defendants guilty, and assessed their punishment at a fine of $52.50 each. A new trial was refused them, and they took a bill of exceptions. Final judgment was rendered in accordance with the verdict, and both defendants brought error.

### OPINION.

Plaintiffs in error, Robinson & Warren, were partners in a saloon. Robinson made a criminal sale of liquor to a minor, at the saloon, in the absence and without the knowledge of his partner, Warren. Was Warren also criminally liable for the sale?

*Section* 1608, *Gantt's Digest*, made it a criminal offense for any person to sell to or buy for a minor any kind of intoxicating spirits, without the consent or order, in writing, of the parent or guardian of such minor.

In *Cloud* v. *State*, 36 *Ark.*, 152, it was held that in prosecutions under that Statute, the general rule of law, as

1. LIQUOR: Criminal liability of partner in illegal sale.

to criminal agency applied : That if liquor was sold to a minor by a clerk or partner of appellant, in his absence, and without his direction, authority, consent or approbation, though a part owner of the liquor, he would not be liable, upon the general principle that a man is not responsible for the criminal acts of his partner or agent. That they must answer for their own criminal conduct.

Section 19 of the Act of March 8th, 1879 (*Acts* 1879, *p.* 38), under which plaintiffs in error were indicted, and both convicted, provides that :

"Any person, who shall sell, either for himself or another, or be interested in the sale of any ardent, vinous, malt, or fermented liquors, or any compound or preparation thereof, called tonics, bitters, or medicated whisky, to any minor, without the written consent or order of the parent or guardian, shall be deemed guilty of a misdemeanor ; and on conviction thereof, shall be fined in any sum not less than fifty, nor more than one hundred dollars."

Section 5, of the same Act, makes persons selling ardent spirits, etc., for themselves, or others, or interested in such sales, without license, criminally liable.

Plaintiff, Warren, was interested in the sale made to the minor, by his partner, and his case is within the letter of section 19 of the Act.

A Statute of Mississippi prohibits the sale of spirituous liquors to persons intoxicated, and makes the seller, and also any person interested in the liquors sold, liable to indictment. Whitton & Ford were indicted for selling liquor to one Greer, when intoxicated. The proof was, that Whitton & Ford kept a licensed grocery, and that Whitton sold liquor to Greer, when intoxicated, in the absence, and without the knowledge of Ford. The court, charged the jury, that it was immaterial whether both the defendants sold the liquor or not, provided both had an

interest in the liquor sold. Both the defendants were convicted, and brought error ; and the High Court of Errors and Appeals affirmed the judgment. *Whitton & Ford* v. *State*, 57 *Miss.*, 379.

Justice HANDY, who delivered the opinion of the court, after stating the facts of the case, said :

" The first error assigned, is to the following instruction, given at the instance of the State, etc., that it is immaterial whether both defendants sold the liquor or not, provided both had an interest in the liquor sold.

" It is insisted that this instruction was erroneous, because a partner is not liable, criminally, for the criminal acts of his co-partner, or his agent, employed to do his legal business.

" This is true, as a general rule of law, and if the instruction was supported alone by general principles the objection to it would prevail. But the Statute, in relation to the subject, establishes a new rule of evidence, affecting the responsibility of parties so situated. It prohibits, among other things, the sale of any vinous or spirituous liquor, by any person having license to retail the same, to any person then being intoxicated ; and provides, that the person so offending (and also any person who may own, or have any interest in any vinous or spirituous liquors, sold contrary to this act), shall be liable to indictment," etc. *Rev. Code*, 199, *Art* 9.

" It is admitted that Ford was a partner in the grocery, and interested in the liquor charged to have been sold. The rule, then, declared by Statute, renders him responsible for the illegal acts of his partner, done in the course of the partnership business, whether he participated in the act or not ; and the instruction is sanctioned by the Statute. But it may be said, that to give the Statute such a construction would be contrary to the principles of natural justice, and

oppressive. This view might be taken with better reason; and, in order to ascertain the true construction of the Statute, if there was any room for doubt upon it. But the terms of the Statute are plain and explicit, and there is no room for construction upon the point raised by the objection under consideration. Its object is as plain as its terms are clear. It was intended to reach a grievous evil in the community, by which persons of more or less responsibility, engaged worthless and profligate persons in the business of retailing spirituous liquors, for the profit of their employers, in violation of the law of the land, resorting to all sorts of pretences, artifices, and frauds, to conceal the violations of law, or the guilty participation of the principals in it. The evil required a stringent process to reach it, and the Legislation designed by the Statute, in some degree, to meet and prevent it. Persons, who, by this means, set up and enable others to engage in a business, which, in its very nature is almost inseparable from violations of law, have no right to complain that the tribunals of justice are clothed with adequate powers to drag them from their concealment, and to visit upon them some slight degree of punishment for the misery and crime which they have been instrumental in inflicting upon the community within the range of their influence.''

*Smith* v. *Village of Adrian*, 1 *Michigan*, 495, seems to be in point. The village of Adrian prosecuted Smith by a penal action for selling spirituous liquors without a license. It was proved, on the trial, that Smith & Manning were engaged, as partners, in keeping a recess, in the Franklin House, in the village of Adrian; and the trial court permitted the acts of Manning to be given in evidence against Smith. The Supreme Court sustained this ruling, holding that Smith, being a partner of Manning, and participating in the profits of the unlicensed sales, was responsible for his

acts, under the Statute regulating the business of selling liquors.

By the Act of March 8th, 1879, the Legislature has, in effect, declared that persons interested in the sale of ardent spirits, etc., shall be criminally responsible for illegal or forbidden sales, whether made by themselves or their partners, or employees, in the business. This is a departure from common law principles, and a new feature in the legislation of this State. The whole act is but a police regulation of the sale of ardent spirits, etc., and the feature in question violates no clause or provision of the Constitution. The law says to persons wishing to engage in selling spirituous liquors, or to be interested in sales thereof, you must be careful in the selection of your partners, or servants, and watchful of their conduct in your business ; for if they make forbidden sales, you are responsible. You must see that sales, in which you are interested, are not made without license, nor made to minors, without proper permission from their parents or guardians. If you are not willing to engage, or be interested in the business, on these terms, there is no compulsion upon you to do so.

On the subject of retailing spirituous liquors, there can be no assertion of a natural right, or appeal to natural justice. The whole subject is within the police power of the State, (34 *Ark.*, 397), and persons engaging in the business must submit to such regulations, terms and burthens as the Legislature has deemed it expedient to prescribe for the public good.

*2. Retailing, not a natural right.*

Robinson & Warren were partners, in a saloon. Robinson made an illegal sale of liquor, to a minor, at the saloon, and in the partnership business. Warren, though absent at the time of the sale, and without proof that he had knowledge of it, is subject to indictment, as well as Robinson, under section 19, of the Act of March 8th, 1879.

Such is the conclusion of the court in this case.

If it be thought that the law, in conjectural cases, may work a hardship, persons engaged or interested in the sale of liquors, must apply to the Legislature to repeal or amend it; the courts can do neither.

If it be said that Warren may have forbidden his partner to make illegal sales to minors, may have repudiated this very sale, and refused to share in its profits, it is sufficient to reply that he offered no such proof.

We are deciding the case as presented in the transcript, and not an imaginary case.

Affirm.


EAKIN, J.—Dissenting.   I cannot concur in the opinion of the court, even supported, as I concede it to be, by the Supreme Court of Mississippi.  The tone of the latter court, as exhibited by the extracts imported into the opinion of this court, does not seem judicial; and I cannot resist the conviction that the case was ill-considered, and the result dangerous.   There is reason to apprehend, moreover, that our own courts. are going too far in the support of a vague and mysterious *police power*, as it is called, under which Constitutional limitations become indistinct.  This power may come, by gradual steps, to recognize no inalienable right which it need respect, when it stands in its way.

Our Constitution does not provide that its sacred and time-honored guarantees shall be subject to any exception in favor of a shadowy police power, under which, as has been forcibly remarked by a prominent jurist of our State, "Our liberties may be driveled away."

Our Constitution recognizes inherent rights which are inalienable; and its enumeration of them is not exhaustive. "*Amongst them*" are the rights which all men have "of

enjoying and defending life and liberty; of acquiring, possessing, and protecting property and reputation; and of pursuing his own happiness"—of course, in lawful ways.

It is lawful to own whisky and to sell it, under license. The Legislature has so declared. If it be dangerous, or immoral, why not further regulate or prohibit it? The police power is confessedly competent for that. Whilst the business is sanctioned thus, even encouraged, as a source of revenue, by what warrant can the judicial mind affect it with a tinge of turpitude, and, for that reason, withdraw from the citizens engaged in it, the ægis of the Constitution, leaving them alone to be punished by the Legislature, under the pretext of "rules of evidence," and "the police power," for offenses which they never committed, nor abetted, nor ratified, nor knew of? They are not pariahs.

It is lawful to own navy revolvers, and to carry them in the hand; yet, if our courts should conclude such things to be practiced by violent and dissolute men, I think they would not allow the Legislature to establish such "rules of evidence," or "police regulations" as would make the owner or half owner of a revolver, punishable for a murder committed by a person in whose hands he had placed it for lawful purposes. It would seem to me a far more direct and legitimate means of repressing the evil to pass an Act to prohibit the ownership or use, altogether, if they could; and if they could not, they could not indirectly do it by making it extra perilous.

If the construction, which this court puts upon the law in question be correct, and the law be constitutional, as construed, what is to prevent the Legislature, if advised, from following it with another, to make owners of liquor, exposed lawfully for sale, more careful to prevent crime, and, by a "police regulation," providing a "rule of evidence" to the effect that, if a pocket be picked in a saloon,

they shall be indicted, held guilty of the act, and sent to the penitentiary?

If there be any right more inherent or inalienable than that of going free of a crime which one never committed, nor intended to commit, nor authorized any one to commit, nor knew of when committed, I cannot conceive it. A criminal conviction, even for a misdemeanor, endangers *liberty* and tarnishes *reputation*. The Constitution does not leave innocent citizens naked to that danger and that detriment, at the will of the Legislature. Their right to enjoy liberty and protect reputation, is absolute, inherent, and inalienable, until they do some unlawful act. It is not an unlawful act to be a partner in a licensed retail dram shop. Many of our good citizens wish it were; but the Legislature has thought differently. A man cannot be indicted for that. How, then, because of that, can he be made amenable for an *unlawful* act, done by another, without his knowledge or consent—even against all his efforts to guard against it? For, under this decision, it would be wholly futile for him to show that he had taken every precaution.

Courts may consider the nature of an occupation to explain an act; but I fail to perceive the principle upon which they can, judicially say, that this, or that *lawful* business is so disreputable or dangerous, that those who engage in it may not have the same protection of liberty and reputation, as other citizens have. It seems to me, that if the sale of liquors needed more safeguards, they might be afforded by the imposition of additional civil liabilities, which affect neither liberty nor reputation. Several of the States have tried that, without constitutional impediment; and we have already some wholesome laws of the kind. For instance, the very law in question provides (*sec.* 10), that every applicant for a liquor license, before obtaining it, shall enter into a bond to the State, in the sum of two thousand dollars, condi-

tioned to pay damages "that may be occasionad by reason of *liquors sold at his house of business*; and shall further pay, to any person, all such sums of money as may be lost at gaming in his said saloon or dram-shop, or any room or building attached thereto, under his control." Now, here is a legitimate police regulation, with the conditions expressed, which were considered necessary to the public safety. It will be observed that they are severe, and bind the applicant for all acts of the kind done at his place of business, whether he was present and consented or not, or whether he knew of them or not. The Legislature might, properly, have made these conditions broader and more severe. They are civil matters, involving no criminal imputation or punishment. One might, without constitutional objection, be made responsible, civilly, for the torts of a partner, or agent, or clerk, committed in the course of the business, and with reference to it. I have never read nor heard of a case, before the one in Mississippi, in which it was held, that *crime* could be imputed to him, without his participation or carelessness. To me, it is simply obliterating all distinction between criminal and civil responsibility; and if it can be done, I know not on what foundation to rest for the security of *any* time-honored liberties. The police power, *then*, may sweep them all from under our feet, like treacherous sand.

"The equality of all persons before the law, is recognized" by the Constitution. By what right can persons engaged in one lawful business be subjected to criminal punishment by a "rule of evidence" *estopping them from proving innocence*, and not applicable to persons engaged in others? The police power, too, has its limits, to prohibit acts regulating conduct, and punish negligences. It is the point in a circle which may move at will, but must not pass on either side the pillars of the Constitution.

Robinson & Warren v. State of Arkansas.

It may punish for *acts*, whether the perpetrator knew them to be criminal or not, but it breaks its appointed bounds when it attaches to one man criminality for the act of another, in which the defendant had no participation. Admit this power and all will be at sea. This is simply what the law in question, as construed, proposes to do. What regulation did Warren violate? All that *he* has done was to put in his capital with Robinson, and to take out license to sell whisky, giving the bond required for the public safety. The Legislature has said he may do that and sell whisky to adults as freely as he might potatoes. The State and county, and through them every tax-payer, as the Legislature must suppose, derive a benefit from that. As it must appear from the legislative and judicial standpoints, it was rather a laudable thing to do. Courts do not sit to administer the moral sentiment of the community, but the law. If then, his partner determines to violate the law, and without Warren's consent or knowledge, perverts the common property for the purpose, how can Warren be criminal? After all, what warrant have we to say that Warren is *interested*, even, in this sale? *Non constat*, but that when advised of it, he may have been mortified and offended by his partner's misdeed, may have refused to receive any profit from the sale, and may have made his partner account for the conversion of the whisky to unlawful purposes. Nevertheless, I understand this court to mean that his guilt became absolute, and fixed by Warren's act, and that he has no escape from the inflexible rule of evidence.

No citizen, nor class of citizens, says our Constitution, shall have granted to them privileges or immunities which, upon the same terms, shall not equally belong to all citizens." All other citizens have the valuable privilege, if it be one, of escaping punishment for crime, by showing their

entire and complete personal innocence of the criminal act. But persons who, under the favor and encouragement of the State, and for a valuable consideration, paid to her, engage in selling whisky, must, according to this decision, be content to be ranked as a sort of outlaws from the eternal principles of right and justice, and be punished for the acts of others, whether personally innocent or not.

There is no. telling how far reaching the range of the decision, just rendered, may be. The case in judgment is very trifling. But the decision is not confined to dram-shops and their owners. Its immediate effect will be to include every wholesale dealer in the State, who sells by clerk, or by agents in other towns, and those' who have interests or shares in the business, whether widows or not, and make each or any, and all of them liable to be dragged. before the criminal tribunals and punished, if the lowest sub-agent or employee anywhere, even the porter who sweeps the stores, should some day sell liquor to a minor. If the mere interest in the liquor sold, fixes the liability,. where is the line to be drawn? Why may not a lady, retaining an interest in a deceased husband's drug store,. find it necessary to follow her Sunday devotions, by an appearance next day in the criminal court, to be punished for a crime committed whilst she was at prayer, by a good-natured clerk who sold a drink to a boy companion? Will she be told she ought not to be in that business? The ulterior effects of the decision in unsettling old well-defined safeguards of liberty, cannot be calculated. Bad precedents are like arrows shot from a bow. They cannot be controlled after they have left the string. Their logical sequence often runs terribly away to consequences never dreamed of. Better stand on the old foundations, and walk in the old ways. I distrust the social advantages promoted by decisions of this nature. *Timeo Danaos, et dona ferentes.* They

have the fair semblance of hand maidens of morality. They *may be* wooden horses, unwittingly drawn within the citadel of the Bill of Rights.   I think they are.

With genuine deference to the views of. my associates, which I know they have thoughtfully reached, I do not think that the authorities, quoted by them, except the case from Mississippi, have any just bearing upon this question. That case, till now, has stood alone, confessedly at variance with old well settled principles of justice, based solely upon a concession of power to the Legislature to do a shocking thing for a laudable purpose, and declining to entertain any question as to whether the Legislature meant any thing else than what the words literally import.

It is for that reason, and because of the expressions in the Mississippi opinion, that I do not consider its tone judicial. We have been used to treat the legislative body with more consideration, and to approach it with the presumption that it did not intend an absurdity. We have, on several occasions, in that view, disregarded the plain import of its language.   I think this court should do so now, and presume against an intention of the Legislature to violate natural right, and the spirit, if not the letter of the Constitution. I believe it intended, and this would be just, to punish criminally, every one who participated in, or knowingly allowed, for his own interest, or knowingly received to his own use, the profits of a sale of liquor to a minor. It is no objection to this view, that the previous law sufficed for that. It is not unusual to enact laws of a declaratory nature, for prospective operation, and greater certainty. In this view, the charge given by the court below was erroneous.

If my associates mean, in their opinion, to say that an innocent person may, *under peculiar circumstances*, be allowed to show his innocence, where there has been a

Robinson & Warren v. State of Arkansas.

sale of liquors, in which he was interested, it is to be regretted that the court in construing the law, has not indicated the principles upon which the exceptions rest, so that they might be subjected to analysis by the profession, and made intelligible to such citizens as desire to obey the law. If they mean to decide only that the proof of the sale shall be *prima facie* proof of the guilt, throwing the *onus* upon, but allowing the privilege to the defendants, each and all, of showing that they had no complicity in the criminal act, then their construction of the law agrees with my own. My only regret in such case would be, that they decline to make the court express what they actually mean; and by sustaining the charge will cause the profession to mistake the conclusions of their own minds. A charge *asked* may be refused if there be no evidence to support it. But this charge was *in invitum*. It was given by the State against the defendants' objections, and upon it the State procured the conviction. She cannot be allowed now thus to play fast and loose, and trifle with the liberty and reputation of the citizen. She cannot be heard to say that there was really no evidence of defendants personal innocence. Why then ask such a definite charge, excluding from the jury all consideration of the matter? If the charge is incorrect, there should be a new trial. Holding it correct, and refusing a new trial, will be taken every where, and, under correction I think should be, as an announcement of it as law.

I am very sure my associates are not in earnest in saying, that "on the subject of retailing spirituous liquors there can be no question of a natural right, or appeal to natural justice." There is surely no warrant for that in the opinion quoted from 34 *Arkansas*. I am equally sure they do not mean to base their judicial opinion upon any such principle as, that a man by any innocent act, may consent to

abide a criminal prosecution in the future, without the privilege of then showing his want of any participation in a criminal act. Such rights are inalienable. They cannot be waived, and I do not think courts have any thing to do with the citizens' moral right to complain, if he have the legal right to do so. Antonio really felt that he had no right to complain of the penalty of *his* bond, but an English Court of Chancery, or common law either, would have heard him nevertheless.

I think for error in the charge, the judgment should be reversed, and a new trial awarded. I intend this dissent to apply to all the cases now pending, involving the same questions, and which may be based on a construction of the law, according to its letter.