[Crim. No. 681. First Appellate District.—July 31, 1917.]

THE PEOPLE, Respondent, v. PETER MALJAN, Appellant.

CRIMINAL LAW—EMBEZZLEMENT—PARTNER.—A partner who feloniously converts to his individual use funds of another person which have come into his custody or under his control as a member of the partnership with which the prosecuting witness was doing business in the relation of principal and agent may be guilty of embezzlement.

ID.—SUFFICIENCY OF INDICTMENT.—An indictment charging a partner with embezzling certain moneys received by the partnership from a sale of grapes handled on consignment is not prejudicial in charging that the defendant individually embezzled the money as agent of the consignor, instead of charging that he embezzled the money as a member of the partnership, which was the agent of the consignor, where the defendant is shown to have been in absolute control of the entire business of the partnership and that the defendant knew the charge he was called upon to answer.

ID.—TRIAL ON SATURDAY AFTERNOON—WAIVER.—In a criminal action the defendant cannot complain that his trial was finished on a Saturday afternoon, in violation of sections 133 and 134 of the Code of Civil Procedure, where his attorney in open court waived the right to object to the trial proceeding upon his attention being called to the fact that the hour of noon had arrived.

ID.—DISTRUST OF ORAL DECLARATIONS—INSTRUCTION.—A refusal to instruct the jury that evidence of the oral declarations of the defendant should be viewed with caution is not error, as the instruction is a mere commonplace which all jurors ought to be expected to know.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Hahn & Hahn, Everts & Ewing, and W. J. Ford, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

BEASLY, J., pro tem.—The defendant, Peter Maljan, was convicted of embezzlement in the superior court of Fresno

County, and appeals from the judgment and order denying his motion for a new trial.

There was evidence from which the jury were justified in finding the following facts, among others, in this case:

The defendant, Peter Maljan, was a member of a copartnership composed of himself, his brother, and another person, doing business in Fresno as packers, brokers, and shippers of fruit. The prosecuting witness, Homsy, delivered his crop of grapes to the Maljan firm for shipment to, and sale in, the eastern market. The grapes were delivered to the firm and accepted by them upon consignment, to be shipped east and the proceeds were to be paid to Homsy, the defendant's firm acting in the matter as commission brokers and agents for Homsy. The copartnership received the returns from these grapes amounting to nine hundred dollars, over and above an advance of two hundred dollars made to Beach & Company, another copartnership, through whom the grapes were delivered to Maljan's firm. The returns from these grapes were never paid to Homsy.

As is usual in such cases as this, the testimony is complicated and difficult to compass, but the jury was authorized to find the foregoing facts from the evidence, as will be illustrated by stating some of the testimony.

Homsy's fruit was delivered to the copartnership of Maljan Brothers & Company through one Beach. Beach told Thayer, an employee of Maljan Brothers, in the defendant, Peter Maljan's presence, that Homsy wanted his crop handled on consignment, and Beach asked if they wanted to handle the fruit in that manner; either Peter Maljan or Thayer, who was an employee of Maljan Brothers & Company, answered that they did want to handle the grapes in that way. No witness testified categorically that Peter Maljan himself made this statement, but he was present at the time the statement was made and the overwhelming weight of evidence is that defendant either made the statement himself, or that Thayer made it for his firm in his presence. Peter Maljan was the managing partner of his firm in Fresno at least, and Thayer was a salaried employee thereof, working under the immediate supervision of the defendant himself. The circumstances surrounding the above-recited conversation between Beach on the one hand and Thayer and Maljan on the other

are such that the question whether Maljan heard this statement, so as to be bound by it in a criminal prosecution, was one for the jury to decide, and the above-stated evidence answers the contention of the defendant that there was not sufficient evidence to show that the grapes were received by Maljan Brothers & Company on consignment. In addition to this, however, Russell, Beach's bookkeeper, testified that Peter Maljan instructed him that Homsy's grapes were to be handled on consignment. The grapes were shipped east and handled the same as other crops. When Thayer received the bills of lading he drew against them, attached the draft to the bill of lading, made out the deposit slip with the draft indorsed, and attaching these papers together handed them to the receiving teller of the bank with which defendant's firm did business, who, on receiving instructions by wire from the east that everything was regular, credited the amount of the draft to Maljan Brothers & Company. The amount of money coming due to Homsy from his crop was about one thousand one hundred dollars, two hundred dollars of which was, as has been stated, advanced by Maljan to Beach for his services. Peter Maljan was almost constantly in Fresno until December 7th, when he departed from that city, leaving no money in the bank there to the credit of Maljan Brothers & Company. There is a mass of other evidence in the record, some direct but much of it circumstantial in character, all tending to support the verdict on all points.

The principal ground upon which a retrial of this case is urged is one of criminal pleading. The indictment charges that the defendant, Peter Maljan, was the agent of Homsy and that by reason of such agency there came into his care, custody, and control nine hundred dollars, the personal property of Homsy, and that the defendant thereupon, and on or about December 20, 1915, embezzled and appropriated these funds to his own use. Except in acting as a member of the partnership of Maljan Brothers & Company, the defendant never received into his possession or control any money of Homsy, and he never acted for Homsy except as a member of the partnership. Upon this record the defendant claims that the evidence does not sustain the verdict in this, that to use his language, "the information in this case does not attempt to charge the defendant with embezzlement by reason of the fact that he was the managing partner of the firm which

was in receipt of consignment of these grapes, but without charging these facts, charges him individually with being the agent; charges him individually with the receipt of the money; charges him individually with the appropriation of the money, when the evidence totally and absolutely fails to show any individual liability whatsoever which would support any such conclusion.'' And defendant also contends that on these facts there arises a variance between the indictment charging that Maljan, the defendant, received this money as Homsy's agent and the proof that he received it as a member of the partnership of Maljan Brothers & Company, who were acting as agents for Homsy in this transaction.

A partner who feloniously converts to his individual use funds of another person which have come into his custody or under his control as a member of the partnership with which the prosecuting witness was doing business in the relation of principal and agent may be guilty of embezzlement. (*State v. Crosswhite,* 130 Mo. 359, [51 Am. St. Rep. 571, 32 S. W. 991].) Perhaps it would have been better criminal pleading for the district attorney to have charged that Maljan embezzled this money as a member of a partnership which was the agent of Homsy. But the relations of individual partners to persons who occupy toward the partnership the relation of principal by employing the partnership as their agent are those of principal and agent. Indeed, the liability of general partners for each others' acts are those of agents. (Civ. Code, sec. 2443.) The district attorney could not have charged the partnership as an entity with having embezzled these funds. The party charged with embezzlement in such case must be the individual partner who converts the funds. In this case Peter Maljan was in absolute control of the entire business of the partnership in Fresno. The money was deposited in the bank to the account of the partnership, which he thus controlled, and the question whether he was the person who had fraudulently converted this money was a question for the jury to determine from all the evidence in the case. The partnership is not a person separate from its component members in the sense that a corporation is a separate entity. The variance, if any, between the indictment charging a direct agency and the proof of the indirect agency through the medium of the partnership was not of such a nature as to prejudice the defendant, for an examination of

the record discloses that the defendant knew perfectly from the beginning of this prosecution what charge he was called upon to answer. "A material variance between the proof and information arises when an acquittal of the defendant under the information would be no bar to a further prosecution for the same offense; but where the discrepancy does not affect the validity of the information, or prejudice or affect the substantial rights of the defendant in his defense, the variance is immaterial." (*People* v. *Arras,* 89 Cal. 223, [26 Pac. 766].) There can be no question but that an acquittal here would have barred a similar prosecution for this same offense, and the defendant was not and could not have been surprised by the evidence adduced against him in this case.

Therefore, the contention that the evidence does not justify a finding by the jury that Peter Maljan was Homsy's agent, and also the contention that there was a variance between the indictment and the proof which really raises the same point, must both be decided against the defendant.

The defendant asserts that he should be given a new trial because a portion of the trial, namely, the instructions of the court and argument of counsel, took place after 12 o'clock noon of a Saturday, a legal holiday. Defendant relies upon sections 10, 133, and 134 of the Code of Civil Procedure and cases construing those sections to support this contention. Conceding but not deciding that the court erred in proceeding with the trial into Saturday afternoon, still, the defendant cannot be heard to complain of this, for his attorney, on his attention being called to the fact that the hour of noon had arrived, distinctly and in open court waived the right to object to the trial proceeding into the afternoon, and this is a matter in which the defendant's waiver is binding upon him. It falls within the same class of rights, upon the subject of waiver, as a right to be present at a view of the premises by the jury, the right to have the judge present at such view, and other similar rights, and in such cases it has been held that the right may be waived. (*People* v. *Mathews,* 139 Cal. 527, [73 Pac. 416]; *People* v. *White,* 5 Cal. App. 329, [90 Pac. 471]; *People* v. *Bird,* 132 Cal. 261, [64 Pac. 259].)

Many instructions which were requested by the defendant were rejected by the trial court, and the rulings excepted to, but it would serve no purpose to review these instructions,

because all instructions asked by the defendant and so refused, except one, were given by the court in substance and in language quite as favorable to the defendant as that of the instructions on the same subject submitted by him. The one such instruction not so given in substance was to the effect that evidence of the oral declarations of the defendant ought to be viewed with caution. The refusal to give this instruction has been held not to be error on the ground that it is a mere commonplace which all jurors ought to be expected to know. (*People* v. *Wardrip*, 141 Cal. 229, [74 Pac. 744]; *People* v. *Ruiz*, 144 Cal. 251, [77 Pac. 907].)

Exception is taken to the question asked of the witness Thayer as to whether he did not, at a meeting of the creditors of Maljan Brothers, state that all he and the defendant ever heard that Homsy claimed about his grapes being consigned was in a letter received by Homsy a short time before. The objection to this question was on the ground that it was not cross-examination, and this was admitted to be the case by defendant's counsel. The defendant cannot now take advantage of this ruling in face of this admission.

The petition in insolvency filed by Peter Maljan was offered and received in evidence. It was relevant for the reason that it contained an admission in the list of creditors that the defendant was indebted to Homsy in the sum of nine hundred dollars; that is to say, that there was nine hundred dollars due Homsy for his grapes. Evidence that there was no money in the account of Maljan Brothers & Company at the time the defendant left Fresno was material. The returns from the fruit delivered by Beach, including Homsy's grapes, were deposited in this account. The circumstance that the defendant left Fresno with no money in this account, taken in connection with the fact that he was the sole managing agent of the company at Fresno, tended at least to show that he had himself used this money. Nor was any error committed in receiving in evidence the books of Beach & Company, for the reason that the latter firm was in fact the servant of the defendant, as appears from the evidence. It was through Beach & Company that the fruit was received and much of the business transacted. The details of the packing and shipping of the fruit were taken care of by Beach & Company and the business of his company was practically a part of the defend-

ant's business. These are the only matters which seem to us to require notice.

The judgment and order are affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 30, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1917.