THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILSON & Co., INC., Defendant.

Supreme Court, Oneida County, November 15, 1930.

*Hamilton Ward, Attorney-General [Pirnie Pritchard, special attorney for the Department of Law, State of New York], for the plaintiff.*

*Rudd, Griffin & Penberthy [Francesco Penberthy of counsel], for the defendant.*

DOWLING, J. Plaintiff instituted this action to recover of the defendant a penalty of $100 for an alleged violation of article 13-A of the Agriculture and Markets Law of the State of New York, which relates to the candling, standardizing, grading and labeling of eggs for sale by producers, wholesalers, commission merchants, jobbers and retailers for human consumption.

The complaint charges that one Sportelli, on the 7th of January, 1930, conducted a retail store in the city of Utica, wherein he sold eggs to his customers, for human consumption; that the defendant, a foreign corporation, on said date, sold and delivered to the said Sportelli " One crate of eggs, in which were packed cartons containing one dozen eggs, each, * * * that each carton was marked ' Clear Brook Eggs Grade A Refrigerator ' * * * that defendant also delivered to said Sportelli, an invoice upon which it appeared that the eggs sold were ' Grade A Refrigerator; ' that all of said eggs, with the exception of three * * * were not of the grade as marked on the cartons, but were of an inferior grade, not uniform in size and underweight, and were not Grade A eggs, as determined by the Rules and Regulations in force at said time as promulgated by the Commissioner of the Department of Agriculture and Markets, pursuant to Article 13-A of the Agriculture and Markets Law of the State of New York. That the defendant, by reason of the foregoing facts, violated the Laws of the State of New York, in such case made and provided, and is liable to the People of the State of New York in the sum of $100," for which amount judgment is demanded.

The defendant admits, in its answer, that on January 7, 1930, it sold and delivered to Sportelli, at his store in Utica, one ·crate of eggs, in which were packed cartons containing one dozen eggs, each, and that each carton was marked "Clear Brook Eggs Grade A Refrigerator" and that at the time of the delivery of said eggs by the defendant to Sportelli, the defendant also delivered to Sportelli an invoice marked "Grade A Refrigerator Eggs." Defendant denies all of the other allegations of the complaint above set forth.

Defendant now moves, under rule 106 of the Rules of Civil Practice and section 279 of the Civil Practice Act, for a dismissal of the complaint, asserting that the same does not state facts sufficient to constitute a cause of action for the following reasons: (a) Article 13-A applies to sales of eggs by retailers to consumers and not to sales from commission merchants and wholesalers to retailers. (b) If article 13-A applies to sales of eggs from commission merchants and wholesalers to retailers, it is unconstitutional and invalid. ·

Chapter 409 of the Laws of 1927, article 13-A, entitled "Agriculture and Markets Law," provides, in part, as follows:

"§ 160-a. Eggs; sale for food by grades or standards; consumer; definition. No person, and the term 'person' in this statute shall include an individual, partnership, corporation or association, shall either as producer, wholesaler, commission merchant, jobber or retailer, sell, or offer to sell, or expose for sale for human consumption any eggs in the shell or otherwise which are unfit for human food. From and after the establishment of specific grades or standards of quality and size or weight of eggs by the commissioner of agriculture and markets as provided in the next section, eggs for human consumption shall not be sold or exposed for sale except by the grades or standards so established.

"The term 'consumer' whenever used in this statute shall mean any person purchasing eggs for his or her own family use or consumption, or a restaurant, hotel, boarding house, bakery or other institution purchasing eggs for serving to guests or patrons, or for its or their use in cooking or baking.

"§ 160-b. Establishment of grades or standards. It shall be the duty of the state department of agriculture and markets to enforce the provisions of this article and the commissioner of agriculture and markets is hereby vested with full power to establish forthwith and from time to time *specific grades or standards of quality and size or weight to govern the sale of eggs to the consumer, and to establish different grades or prescribe different terms indicative of size or weight, quality and manner of preparation of eggs for human consumption*

*for use in sales between the producer and wholesaler, between the wholesaler and jobber, and between the wholesaler or jobber and the retailer.* The commissioner of agriculture and markets shall have full authority to make rules and regulations for carrying out and enforcing the provisions of this act, provided however, that the grades or standards of quality established by him shall not permit *the sale of any eggs for human consumption of poorer quality than permitted by the lowest grade or standard for edible eggs established from time to time by the United States secretary of agriculture.* All rules, regulations and standards of quality and size or weight established under the authority of this statute shall *have the force of law* \* \* \*.

" § 160-c. Retail sale by grade or quality; fresh eggs; definition. It shall be unlawful for any person to sell, or offer to sell or expose for sale to a consumer any eggs intended for human consumption other than those of his own production without notifying by suitable sign or label the person or persons purchasing or intending to purchase the same of the exact grade or quality of such eggs, according to the standards prescribed by the commissioner of agriculture and markets \* \* \* " (as amd. by Laws of 1929, chap. 157).

" § 160-d. Sales; misrepresentation. *No person* shall sell or offer for sale, or advertise for sale, *eggs for human consumption* if the package containing them or the label on them, or any advertising accompanying them, shall bear any statement or device regarding the eggs which may be false or misleading in any particular.

" § 160-e. Making and filing of invoice. Every person, other than the producer, in selling eggs to a retailer, shall furnish to such retailer an invoice showing the exact grade or quality of such eggs according to the standards prescribed by the commissioner of agriculture and markets. *If any of the eggs covered by the invoice have been in cold storage, as defined in article nineteen of this chapter, for more than thirty days, either within or without the state, the invoice, in addition to showing the grade or quality of such eggs, shall indicate the* fact of such storage by the use of the words ' cold storage ' or ' refrigerator.' A copy of such invoice shall be kept on file *by the person selling* and the *retailer* at their respective places of business for a period of sixty days, and shall be available and open for inspection at all reasonable times by the state department of agriculture and markets " (as amd. by Laws of 1929, chap. 157).

On the 19th of August, 1927, Berne A. Pyrke, as Commissioner of Agriculture and Markets of the State of New York, pursuant to section 160-b of article 13-A of the Agriculture and Markets Law, established and promulgated grades and standards, rules and regulations, governing the sale of eggs *to customers* in New York

State. (37 State Dept. Rep. 173.) The grades were based upon the United States standards of quality for individual eggs formulated by the United States Department of Agriculture and set forth in the standard and grade schedules. " The classification of individual eggs according to these standards shall be effected through examination of the shell of the egg to determine its exterior quality and by the process known as candling, to determine its interior quality." " All eggs unbroken and in the shell when sold or exposed for sale to consumers for human consumption, shall be sold or exposed for sale on the basis of specific grades," viz., " Nearby Fancy Grade," " Grade A," " Grade B," " Grade C," " Grade Unclassified."

Rule II, paragraph c, of the said rules and regulations provides: " Any person selling eggs other than those of his own production, to a retailer, shall furnish an invoice to the retailer prior to or accompanying the delivery of the eggs." The rules further specify the grade according to the New York Retail Egg Grades. If the eggs have not been candled by the seller, the invoice, in lieu of grade designation, may substitute this legend: " Notice. These eggs have not been candled. Before resale they must either be candled and graded or sold under the designation Grade C." The invoice shall, in addition, designate the eggs as " cold storage " or " refrigerator " if the eggs have been in cold storage for more than thirty days, either within or without the State.

Section 160-a defines the meaning of the term " consumer " as follows: " The term ' consumer ' whenever used in this statute shall mean any person purchasing eggs for his or her own family use 'or consumption, or a restaurant, hotel, boarding-house, bakery or other institution purchasing eggs for serving to guests or patrons, or for its or their use in cooking and baking."

*Rule 2 of the said rules and regulations* defines the term " retailer " as follows: " For the purpose of these regulations, a retailer shall be termed to be any person, firm or corporation buying eggs for the purpose of resale to consumers."

The statute purports to and does regulate the marketing of eggs " for human consumption." There is a plain distinction between the term " consumer " and the expression " human consumption " as used in said statute. In this respect it is double barreled. The statute and the rules established thereunder by the Commissioner cover the whole field of the marketing of eggs from the producer down to the consumer. The most important step in the marketing of eggs, for the protection of the consumer, is to see that they are properly graded and labeled according to the grades. It is a well-known fact that the average retail store is not equipped

to candle, grade and label eggs delivered to it for sale to its customers and that the retailer must rely largely upon the middleman, or wholesaler, for the proper grading and labeling of such eggs. To hold otherwise, would place the burden upon the retailer of determining whether eggs delivered to him, to be sold immediately to his customers, have been properly candled, graded and labeled. Such a construction would defeat the beneficent purpose of the statute. The duty of candling, grading and labeling eggs to be sold for human consumption rests upon the producer, unless eggs are sold by him directly to the consumer, middleman or wholesaler, unless the retailer, when he purchases from them, is notified, in writing, that the eggs purchased have not been candled, and, in that event, the retailer must, before offering such eggs for sale to consumers, undertake to properly candle and grade them, or sell them under the legend " Grade C," which designation will inform consumers that the eggs are edible but have not been sorted as to size and quality in accordance with grade requirements. In any event, the sale of eggs, for human consumption, which are unfit for that purpose, is positively forbidden by the statute in question.

The complaint specifically charges that the defendant sold eggs to retailer Sportelli for human consumption, the cartons containing which were labeled " Clear Brook Eggs Grade A Refrigerator," and that such legend was false and misleading; that said eggs were not of the grade as marked on the cartons, but were an inferior grade, etc., and that said eggs did not comply with the grade established by the said Commissioner of Agriculture and was in violation of the provisions thereof. If these facts can be established they would constitute a violation of the provisions of article 13-A of the Agriculture and Markets Law.

Furthermore, the complaint charges that the defendant violated rule 3 of the rules and regulations formulated by the Commissioner of Agriculture and Markets, in that it furnished and delivered to Sportelli, with said eggs, an invoice containing the legend " Grade A Refrigerator Eggs," when, in fact, such eggs were not " Grade A Refrigerator " according to the New York retail eggs grades as aforesaid. If such be the fact, and the defendant was not a producer of the particular eggs, such an invoice would be false and misleading as not specifying the exact grade of such eggs, and, in view of the fact that the rules have the force of law under section 160-b, would constitute a violation of the provisions of said article 13-A and would subject the defendant to a penalty. The complaint is silent as to whether the defendant is a producer or wholesaler, but it may be inferred from the furnishing of the invoice that the particular eggs were not produced by it.

The defendant's contention that article 13-A relates entirely to consumers is untenable. Defendant fails to distinguish between the term "consumer" and the term "for human consumption." Manifestly the eggs in question were sold by defendant for the purposes of human consumption. The Legislature very wisely anticipated that the time to protect the consumer against fraud was to compel the commission merchant or the wholesaler to candle, grade and properly label the eggs before they reached the retailer, and in cases where the eggs were not candled and graded by them, or sold by the producer, to require the furnishing of an invoice which must contain the following legend: " Notice. *These eggs have not been candled,*" and that before resale they must either be candled and graded or sold under the designation " Grade C."

To adopt the contention of the defendant that the statute can be violated only by the retailer, who sells to the consumer directly, would be to thwart the very purpose of the Legislature in enacting said statute.

The statute is a wholesome and reasonable provision for the protection of the public health and does not violate any of the constitutional rights of the defendant.

The statute, casually read, seems somewhat confusing, but, on careful study and analysis, the intent of the Legislature to penalize wholesalers and commission merchants, as well as retailers, for false, misleading and inexact statements in regard to eggs offered for sale for human consumption becomes manifest.

Motion to dismiss the complaint is denied, with costs.

Ordered accordingly.