[Crim. No. 8612. Second Dist., Div. Three. Mar. 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CIRCUS ROOM, INC., Defendant and Appellant.

686

Alexander Googooian and Albert C. S. Ramsey for Defendant and Appellant.

James T. Starr, City Prosecutor, and Phil J. Shafer, Deputy City Prosecutor, for Plaintiff and Respondent.

FILES, J.—Defendant, a corporation which operated an on-sale liquor establishment, was tried before a jury and convicted of offering for sale and keeping for sale two bottles of whisky which had been refilled or partly refilled in violation of subdivision (a) of section 26517 of the Health and Safety Code.[1] Defendant appealed to the appellate department of the superior court, which affirmed by a divided court and then certified the cause to this court under rule 63 of the California Rules of Court* so as to settle an important question of law. The question is the interpretation of sec-

---

[1]Subdivision (a) of section 26517 of the Health and Safety Code reads: "No person shall sell, offer for sale, or keep for sale distilled spirits in any package which has been refilled or partly refilled."

*Formerly Rules on Transfer of Municipal and Justice Court Appeals, rule 63.

tion 26517 as it applies to the evidence in this record. Pursuant to rule 62 of the California Rules of Court† this court ordered the case transferred to it.

The evidence on which the People's case rests may be briefly stated. Two state inspectors entered defendant's premises, examined the merchandise behind the bar and carried away two partially empty bottles labeled "Seagram's V. O. Canadian Whisky" for laboratory analysis. ▮▮▮ Chemists who examined the contents of these bottles testified that one bottle contained dissolved solids in the proportion of 412 grams per 100 liters and the other 413 grams per 100 liters. These chemists were acquainted with similar analyses of the liquor taken from 47 sealed bottles of Seagram's V. O. Canadian Whisky tested over a period from 1945 to 1962. The solids content of those authentic samples ranged from 68 to 147 grams per 100 liters. On the basis of the discrepancy between the solids content of defendant's whisky and the solids content of the authentic samples, the chemists formed the opinion that the two bottles found on defendant's premises contained something other than Seagram's V. O. Canadian Whisky.

Defendant offered to prove by the testimony of the day bartender, the night bartender, and the relief bartender that one of the three had been on duty at all times from the time the premises were unlocked in the morning until the time they were locked at night for the past several months; that none of them had refilled any bottles and none had seen any bottles refilled. Defendant also offered the testimony of defendant's president that he had not authorized anyone to change the one fluid for another in any bottle and that during the time he was present he saw no one effect such substitution. The trial court sustained the prosecutor's objections to both of these offers of proof.

▮▮▮ The parties are in agreement that section 26517, like other statutes designed to ensure pure food and drink properly labeled, imposes strict liability for keeping or offering the prohibited merchandise. If the bottles have been refilled by someone, it is immaterial that defendant had no part in it or knowledge of it. This principle is discussed in such analogous cases as *In re Casperson*, 69 Cal.App.2d 441 [159 P.2d 88], *People* v. *Beggs*, 69 Cal.App.2d Supp. 819 [160 P.2d 600], and *People* v. *Schwartz*, 28 Cal.App.2d Supp. 775 [70 P.2d 1017].

▮▮▮ Although subdivision (a) of section 26517 is doubt-

† Formerly Rules on Transfer of Municipal and Justice Court Appeals, rule 62.

less intended to protect the public against an adulterated or mislabeled product, it speaks in other terms. The essence of the offense is not that the whisky is impure, but the fact that the package has been refilled. If the defendant has merely offered the liquor which the bottler originally put in the package, this subsection has not been violated regardless of what substance is found in the bottle.

In the present case the prosecution's evidence did not prove directly that the solids were not in the whisky when bottled. The case rests entirely upon the hypothesis that genuine Seagram's V. O. Canadian Whisky will always be substantially the same as that which has been bottled under that label since 1945. It is reasonable enough to infer that this is true, but the inference is by no means conclusive proof. Although some brand-conscious individuals may be distressed to hear it, the court must recognize the possibility that the bottler of this whisky might sometime, either inadvertently or intentionally, put out a bottle whose contents deviate from the whisky theretofore found under the same label. The evidence in this case shows nothing about how the accused whisky or the control samples were manufactured or bottled, or when or by whom. There is no evidence as to whether such a variation in the quantity of dissolved solids is considered by the bottler to be of any importance. There is no indication of what precautions, if any, the manufacturer or bottler ordinarily takes to obtain uniformity of solids content.

 Judicial notice may be taken of the federal statute requiring that a package containing distilled spirits be sealed with a revenue stamp. (26 U.S.C. § 5205.) Applying the presumption that the bottler complied with federal law (Code Civ. Proc., § 1963, subds. 1, 20, and 33), one may infer that if the package reached defendant with the stamp intact, it had not up to that time been refilled.

 The testimony of the bartenders was offered not merely to show that defendant had not refilled the bottles, but that no one had refilled them. It was error to reject this evidence. If the jury had heard and believed the testimony of the bartenders, it could have concluded that the substance in the accused bottles was exactly what had come from the bottler in a sealed container, and that the bottler had put out a product which deviated in solids content from

his former product, or that the chemists had made an error in their analysis.

The judgment is reversed. The order denying a new trial is not appealable (Pen. Code, § 1466) and hence the appeal from the order is dismissed.

Shinn, P. J., and Ford, J., concurred.